No. 19-1818

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

STATE OF RHODE ISLAND,

*Plaintiff – Appellee,*

v.

SHELL OIL PRODUCTS COMPANY, LLC; CHEVRON CORP.; CHEVRON USA, INC.; EXXONMOBIL CORP.; BP, PLC; BP AMERICA, INC.; BP PRODUCTS NORTH AMERICA, INC.; ROYAL DUTCH SHELL PLC; MOTIVA ENTERPRISES, LLC; CITGO PETROLEUM CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66; MARATHON OIL COMPANY; MARATHON OIL CORPORATION; MARATHON PETROLEUM CORP.; MARATHON PETROLEUM COMPANY, LP; SPEEDWAY, LLC; HESS CORP.; LUKOIL PAN AMERICAS LLC; and DOES 1-100,

*Defendants – Appellants,*

GETTY PETROLEUM MARKETING, INC.,

*Defendant*.

Appeal from the United States District Court
for the District of Rhode Island, No. 1:18-cv-00395-WES-LDA
The Honorable William E. Smith

**PLAINTIFF–APPELLEE'S RESPONSE BRIEF**

Victor M. Sher
Matthew K. Edling
**Sher Edling LLP**
100 Montgomery St., Suite 1410
San Francisco, CA 94104
(628) 231-2500
vic@sheredling.com
matt@sheredling.com

Neil F.X. Kelly (No. 53595)
Assistant Attorney General
**Office of the Attorney General**
150 South Main Street
Providence, RI 02903
(401) 274-4400
nkelly@riag.ri.gov

*Counsel for Plaintiff-Appellee State of Rhode Island*

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**JURISDICTIONAL STATEMENT** .......... **3**

**ISSUES PRESENTED** .......... **3**

**STATEMENT OF THE CASE** .......... **3**

**SUMMARY OF ARGUMENT** .......... **4**

**ARGUMENT** .......... **6**

I. This Court Only Has Jurisdiction to Consider Federal-Officer Removal. .......... 6

II. The District Court Correctly Rejected Federal-Officer Removal. .......... 11

A. Defendants Have Not Shown They "Acted Under" Federal Officers .......... 12

B. No Nexus Exists Between Defendants' Challenged Actions and The Directions of Any Federal Officer. .......... 17

III. The District Court Properly Rejected Defendants' Other Removal Grounds. .......... 19

A. Plaintiff's Claims Do Not Arise Under Federal Law. .......... 19

1. Defendants' "Arising Under" Theory Is Merely a Veiled Preemption Argument. .......... 20

a. Defendants' Novel "Choice of Law" Analysis Is Baseless. .......... 20

b. The "Artful Pleading" Exception to the Well-Pleaded Complaint Rule Is Co-Extensive With Complete Preemption. .......... 24

2. Defendants Cannot Premise Removal on a Federal Common Law That No Longer Exists. .......... 26

B. *Grable* Does Not Support Removal. .......... 28

1. The State's Complaint Does Not "Necessarily Raise" Any "Actually Disputed" Issues of Federal Law. .......... 30

a. Defendants' "Collateral Attack," "Navigable Waters" and "Duty to Disclose" Arguments Are Not Necessarily Raised in the State's Complaint. ....................31

b. Defendants' Invocation of Foreign Relations Is No Basis for Federal Jurisdiction. ....................................34

2. The Complaint Raises No Questions of Federal Law That Are "Substantial" to the Federal System. .........................35

3. The Balance of Judicial Responsibility Favors State Courts Hearing These State Law Claims. ..........................................37

C. The Clean Air Act Does Not Completely Preempt the State's Claims. ..........................................................................38

1. Congress Did Not Intend the CAA to Displace the State's State Law Claims. ....................................................................39

2. The CAA Provides No Substitute Cause of Action. ................40

D. The State's Claims Are Not Removable Under the Outer Continental Shelf Lands Act. ......................................................42

E. No Federal Enclave Jurisdiction Exists. .......................................44

F. The State's Claims Are Not Removable Under the Bankruptcy Removal Statute. ...................................................................45

1. This Police Power Action Is Exempt from Removal. .............46

2. The Claims Are Not Related to Bankruptcy Proceedings. ......47

G. There Is No Admiralty Jurisdiction. ............................................48

**CONCLUSION** ......................................................................................51

**CERTIFICATE OF COMPLIANCE** ......................................................52

**CERTIFICATE OF SERVICE** ...............................................................53

**ADDENDUM** .........................................................................................54

## TABLE OF AUTHORITIES

**Cases**

*Alabama v. Conley*,
245 F.3d 1292 (11th Cir. 2001) ........ 8

*Almond v. Capital Props., Inc.*,
212 F.3d 20 (1st Cir. 2000) ........ 22

*Am. Elec. Power Co. v. Connecticut*,
564 U.S. 410 (2011) ........ 26, 27

*Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*,
903 F.3d 903 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2043 (2019) ........ 28

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) ........ 34, 35

*Appalachian Volunteers, Inc. v. Clark*,
432 F.2d 530 (6th Cir. 1970) ........ 8

*Arizona v. Manypenny*,
451 U.S. 232 (1981) ........ 11, 17

*Babcock Servs., Inc. v. CH2M Hill Plateau Remediation Co.*,
No. 13-CV-5093-TOR, 2013 WL 5724465 (E.D. Wash. Oct. 21, 2013) ........ 24

*Bader Farms, Inc. v. Monsanto Co.*,
2017 WL 633815 (E.D. Mo. 2017) ........ 34

*Barker v. Hercules Offshore, Inc.*,
713 F.3d 208 (5th Cir. 2013) ........ 50

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
__ F. Supp. 3d, No. 18-CV-01672-WJM-SKC, 2019 WL 4200398
(D. Colo. Sept. 5, 2019) ........ 1

*Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*,
770 F.3d 944 (10th Cir. 2014) ........ 31

*Bell v. Cheswick Generating Station*,
734 F.3d 188 (3d Cir. 2013) ........ 39, 40

*Bennett v. Napolitano*,
746 A.2d 138 (R.I. 2000) ........ 31

*Bennett v. Sw. Airlines Co.*,
484 F.3d 907 (7th Cir. 2007) ........ 33

*BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*,
132 F.3d 824 (1st Cir. 1997) ....................22

*Board of Commissioners of Southeast Louisiana Flood Protection Authority v. Tennessee Gas Pipeline Co.*,
850 F.3d 714 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 420 (2017) ....................33

*Burrell v. Bayer Corp.*,
918 F.3d 372 (4th Cir. 2019) .................... 29, 32, 36, 37

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
797 F.3d 720 (9th Cir. 2015) ....................13

*California v. BP p.l.c.*,
No. C 17-06011 WHA, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018) ....................1

*Camacho v. Autoridad de Teléfonos de Puerto Rico*,
868 F.2d 482 (1st Cir. 1989) .................... 12, 13

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*,
510 F.3d 77 (1st Cir. 2007) .................... 21, 38

*Capron v. Office of Attorney Gen. of Massachusetts*,
944 F.3d 9 (1st Cir. 2019) ....................35

*Carter v. Evans*,
601 F. App'x 527 (9th Cir. 2015) ....................8

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987) .................... 20, 21

*Caver v. Cent. Ala. Elec. Coop.*,
845 F.3d 1135 (11th Cir. 2017) ....................14

*Chevron U.S.A., Inc. v. United States*,
110 Fed. Cl. 747 (2013) .................... 14, 15

*Citizens for Preservation of Waterman Lake v. Davis*,
420 A.2d 53 (R.I. 1980) ....................31

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981) .................... 22, 25, 27

*City of Walker v. Louisiana through Dep't of Transp. & Dev.*,
877 F.3d 563 (5th Cir. 2017) ....................7

*Clark v. Kempton*,
593 F. App'x 667 (9th Cir. 2015)........8

*Coronel v. A.K. Victory*,
1 F. Supp. 3d 1175 (W.D. Wash. 2014)........49

*Cruz v. DaimlerChrysler Motors Corp.*,
66 A.3d 446 (R.I. 2013)........31

*Cty. of San Mateo v. Chevron Corp.*,
294 F. Supp. 3d 934 (N.D. Cal. 2018)........1

*Danca v. Private Health Care Sys., Inc.*,
185 F.3d 1 (1st Cir. 1999)........19

*Darrah v. City of Oak Park*,
255 F.3d 301 (6th Cir. 2001)........9

*Davis v. Glanton*,
107 F.3d 1044 (3d Cir. 1997)........7

*Decatur Hosp. Auth. v. Aetna Health, Inc.*,
854 F.3d 292 (5th Cir. 2017)........7, 9

*Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*,
597 F.2d 566 (6th Cir. 1979)........8

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006)........44

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
26 F.3d 563 (5th Cir. 1994)........43

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008)........46

*Fayard v. Ne. Vehicle Servs., LLC*,
533 F.3d 42 (1st Cir. 2008)........40, 41

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
463 U.S. 1 (1983)........2, 30

*Freeman v. Grain Processing Corp.*,
848 N.W.2d 58 (Iowa 2014)........41

*Gee v. Texas*,
769 F. App'x 134 (5th Cir. 2019)........7

*Gingery v. City of Glendale*,
831 F.3d 1222 (9th Cir. 2016)........34

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*,
865 F.3d 1237 (9th Cir. 2017) .......... 14

*Gonzalez-Garcia v. Williamson Dickie Mfg. Co.*,
99 F.3d 490 (1st Cir. 1996) .......... 10

*Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
164 F.3d 123 (2d Cir. 1999) .......... 23

*Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mf'g*,
545 U.S. 308 (2005) .......... 6, 20, 21, 37

*Gunn v. Minton*,
568 U.S. 251 (2013) .......... 23, 29

*Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*,
874 F.2d 332 (6th Cir. 1989) .......... 39

*Herb's Welding, Inc. v. Gray*,
470 U.S. 414 (1985) .......... 50, 51

*Hilbert v. McDonnell Douglas Corp.*,
529 F. Supp. 2d 187 (D. Mass. 2008) .......... 17

*In re Agent Orange Prod. Liab. Litig.*,
635 F.2d 987 (2d Cir. 1980) .......... 28

*In re Boston Regional Med. Ctr., Inc.*,
410 F.3d 100 (1st Cir. 2005) .......... 47

*In re Crescent Energy Servs.*,
896 F.3d 350 (5th Cir. 2018) .......... 51

*In re Deepwater Horizon*,
745 F.3d 157 (5th Cir. 2014) .......... 43

*In re G.S.F. Corp.*,
938 F.2d 1467 (1st Cir. 1991) .......... 47

*In re Katrina Canal Litig. Breaches*,
524 F.3d 700 (5th Cir. 2008) .......... 19

*In re McMullen*,
386 F.3d 320 (1st Cir. 2004) .......... 46

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
488 F.3d 112 (2d Cir. 2007) .......... 18, 46

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
725 F.3d 65 (2nd Cir. 2013) .......... 18

*In re Ray*,
624 F.3d 1124 (9th Cir. 2010)....................................................................47

*International Paper Co. v. Ouellette*,
479 U.S. 481 (1987) ....................................................................................25

*Jacks v. Meridian Res. Co., LLC*,
701 F.3d 1224 (8th Cir. 2012)......................................................................8

*Jackson v. Johns-Manville Sales Corp.*,
750 F.2d 1314 (5th Cir. 1985)....................................................................28

*Jamil v. Workforce Res., LLC*,
No. 18-cv-27, 2018 WL 2298119 (S.D. Cal. May 21, 2018)..............................45

*Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*,
513 U.S. 527 (1995) ............................................................................. 49, 50

*Jones v. Pineda*,
22 F.3d 391 (1st Cir. 1994) .........................................................................12

*K2 Am. Corp. v. Roland Oil & Gas, LLC*,
653 F.3d 1024 (9th Cir. 2011)....................................................................32

*Lawless v. Steward Health Care Sys., LLC*,
894 F.3d 9 (1st Cir. 2018) ................................................................... 25, 41

*López-Muñoz v. Triple-S Salud, Inc.*,
754 F.3d 1 (1st Cir. 2014) .................................................................... 22, 24

*Lu Junhong v. Boeing Co.*,
792 F.3d 805 (7th Cir. 2015).........................................................................8

*Madruga v. Superior Court of State of Cal.*,
346 U.S. 556 (1954) ....................................................................................48

*Mayor & City Council of Baltimore v. BP P.L.C.*,
388 F. Supp. 3d 538 (D. Md. 2019) ...............................................................1

*Mays v. City of Flint, Mich.*,
871 F.3d 437 (6th Cir. 2017).........................................................................8

*McCullough v. Evans*,
600 F. App'x 577 (9th Cir. 2015)..................................................................8

*McKay v. City & Cty. of San Francisco*,
No. 16-cv-03561, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016).......................34

*Merrell Dow Pharm. Inc. v. Thompson*,
478 U.S. 804 (1986) ....................................................................................29

*Merrick v. Diageo Americas Supply, Inc.*,
805 F.3d 685 (6th Cir. 2015) .......... 28, 39

*Mesa v. California*,
489 U.S. 121 (1989) .......... 11, 12, 17

*Metheny v. Becker*,
352 F.3d 458 (1st Cir. 2003) .......... 25, 29

*Metro. Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) .......... 20, 21, 38

*Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*,
726 F.3d 8 (1st Cir. 2013) .......... 36

*Myhran v. Johns-Manville Corp.*,
741 F.2d 1119 (9th Cir. 1984) .......... 50

*Narragansett Indian Tribe v. R.I. Dep't of Transp.*,
903 F.3d 26 (1st Cir. 2018) .......... 30

*Native Village of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012), *cert. denied*, 569 U.S. 1000 (2013) .......... 26, 28

*Negrón-Fuentes v. UPS Supply Chain, Sols.*,
532 F.3d 1 (1st Cir. 2008) .......... 25

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) .......... 19

*New SD, Inc. v. Rockwell Int'l Corp.*,
79 F.3d 953 (9th Cir. 1996) .......... 24

*Noel v. McCain*,
538 F.2d 633 (4th Cir. 1976) .......... 7

*One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*,
716 F.3d 218 (1st Cir. 2013) .......... 30

*Papp v. Fore-Kast Sales Co.*,
842 F.3d 805 (3d Cir. 2016) .......... 14

*Parker Drilling Management Services, Ltd. v. Newton*,
139 S. Ct. 1881 (2019) .......... 44

*Patel v. Del Taco, Inc.*,
446 F.3d 996 (9th Cir. 2006) .......... 8

*Pennsylvania ex rel. Gittman v. Gittman*,
451 F.2d 155 (3d Cir. 1971) .......... 7

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
559 F.3d 772 (8th Cir. 2009) ....................................................................33

*Pinney v. Nokia, Inc.*,
402 F.3d 430 (4th Cir. 2005) ............................................................ 30, 32, 38

*Plains Gas Sols., LLC v. Tennessee Gas Pipeline Co.*,
46 F. Supp. 3d 701 (S.D. Tex. 2014)..........................................................43

*Plaquemines Par. v. Palm Energy Offshore, LLC*,
No. 13-6709, 2015 WL 3404032 (E.D. La. May 26, 2015)................................42

*Pryor v. Am. President Lines*,
520 F.2d 974 (4th Cir. 1975) ....................................................................49

*R.I. Fishermen's All., Inc. v. Dep't of Envtl. Mgmt.*,
585 F.3d 42 (1st Cir. 2009) ......................................................................21

*Raimbeault v. Takeuchi Mfg. (U.S.) Ltd.*,
772 A.2d 1056 (R.I. 2001).........................................................................31

*Raytheon Co. v. Alliant Techsystems, Inc.*,
No. CIV 13-1048, 2014 WL 29106 (D. Ariz. Jan. 3, 2014) ...............................24

*Recar v. CNG Producing Co.*,
853 F.2d 367 (5th Cir. 1988) ....................................................................43

*Ritter v. Narragansett Elec. Co.*,
109 R.I. 176 (1971) ..................................................................................18

*Rivet v. Regions Bank of Louisiana*,
522 U.S. 470 (1998) ..................................................................................25

*Robertson v. Ball*,
534 F.2d 63 (5th Cir. 1976) ........................................................................7

*Romero v. Int'l Terminal Operating Co.*,
358 U.S. 354 (1959) ..................................................................................48

*Rosselló-González v. Calderón-Serra*,
398 F.3d 1 (1st Cir. 2004) .................................................................. 19, 25

*Rosseter v. Indus. Light & Magic*,
No. C 08-04545 WHA, 2009 WL 210452 (N.D. Cal. Jan. 27, 2009)..................45

*Sam L. Majors Jewelers v. ABX, Inc.*,
117 F.3d 922 (5th Cir. 1997) ....................................................................23

*Sanchez v. Onuska*,
2 F.3d 1160 (Table), 1993 WL 307897 (10th Cir. 1993).....................................8

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) .................................................................. 13, 18

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A. 3d 262, 276 (Conn. 2019)..............................................................37

*State Farm Mut. Auto. Ins. Co. v. Baasch*,
644 F.2d 94 (2d Cir. 1981) ........................................................................7

*State v. Lead Indus., Ass'n, Inc.*,
951 A.2d 428 (R.I. 2008)...........................................................................18

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ..................................................................................22

*Theriot v. Bay Drilling Corp.*,
783 F.2d 527 (5th Cir. 1986) .....................................................................51

*Thermtron Prods., Inc. v. Hermansdorfer*,
423 U.S. 336 (1976) ..................................................................................10

*Things Remembered, Inc. v. Petrarca*,
516 U.S. 124 (1995) ....................................................................................7

*Thornton v. Holloway*,
70 F.3d 522 (8th Cir. 1995) .........................................................................8

*Totah v. Bies*,
No. C 10-05956 CW, 2011 WL 1324471 (N.D. Cal. Apr. 6, 2011) ....................44

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
474 F.3d 379 (7th Cir. 2007) .....................................................................22

*U.S. Bank Nat'l Ass'n. v. Azam*,
582 F. App'x 710 (9th Cir. 2014)................................................................8

*United States v. Little Lake Misere Land Co.*,
412 U.S. 580 (1973) ..................................................................................22

*United States v. Standard Oil Co. of Cal.*,
332 U.S. 301 (1947) ..................................................................................22

*United States v. Standard Oil Co. of Cal.*,
545 F.2d 624 (9th Cir. 1976) .....................................................................15

*Valley Hist. Ltd. P'ship v. Bank of New York*,
486 F.3d 831 (4th Cir. 2007) .....................................................................48

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
646 F.3d 169 (4th Cir. 2011) .....................................................................19

*Washington v. Monsanto Co.*,
738 F. App'x 554 (9th Cir. 2018)....................16

*Watson v. Philip Morris Cos., Inc.*,
551 U.S. 142 (2007)....................5, 13

*Wayne v. DHL Worldwide Express*,
294 F.3d 1179 (9th Cir. 2002)....................22

*Willingham v. Morgan*,
395 U.S. 402 (1969)....................13

*Winters v. Diamond Shamrock Chem. Co.*,
149 F.3d 387 (5th Cir. 1998)....................14

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
516 U.S. 199 (1996)....................9, 11

*Yates v. United States*,
135 S. Ct. 1074 (2015)....................11

**Statutes**

28 U.S.C. §1292(b)....................9, 11

28 U.S.C. §1333....................48, 49

28 U.S.C. §1442....................passim

28 U.S.C. §1443....................passim

28 U.S.C. §1447(d)....................passim

28 U.S.C. §1452....................45, 46, 47

42 U.S.C. §7401....................5

42 U.S.C. §7401(a)(3)....................39

42 U.S.C. §7416....................40

42 U.S.C. §7604....................41

42 U.S.C. §7607....................40

43 U.S.C. §1333(a)(2)(A)....................44

43 U.S.C. §1349(b)....................6

Pub. L. 112-51, 125 Stat. 545 & 546....................11

R.I. Gen. Laws §10-20-1....................31

Rhode Island Const., Art. I, §17....................31

## INTRODUCTION

The State of Rhode Island ("State" or "Rhode Island"), as sovereign and parens patriae and master of its complaint, filed this action in Rhode Island state court, alleging exclusively state law claims. The action seeks relief for climate change-related injuries to the State's public health and welfare, natural resources, public property, and infrastructure. Defendants' liability rests on their deliberate misrepresentation of the climatic dangers they knew would result inevitably from their successful, but misleading and deceptive, marketing and promotion of fossil fuels. Joint Appendix ("JA") 20–164.

The State has the right to pursue in state court its causes of action for public nuisance, strict liability and negligent failure to warn, strict liability and negligent design defect, trespass, impairment of public trust resources, and violations of Rhode Island's Environmental Rights Act. JA.137–62, ¶¶225–315. For the reasons stated by Chief Judge Smith (and almost every other judge to address removal jurisdiction in similar circumstances),[1] those state law causes of action belong in state court.

---

[1] Federal courts in Colorado, Maryland, and California have rejected fossil fuel company defendants' efforts to remove similar actions. *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 2019 WL 4200398 (D. Colo. 2019), *appeal pending*, No.19-1330 (10th Cir.); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *appeal pending*, No.19-1644 (4th Cir.); *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *appeal pending*, Nos. 18-15499, 18-15502, 18-15503, 18-16376 (9th Cir.). Judge Smith acknowledged the contrary conclusion in *California v. BP p.l.c.*, 2018 WL 1064293

This Court has jurisdiction to address only a single issue: whether federal-officer removal jurisdiction exists under 28 U.S.C. §1442.[2] Eight circuit courts across four decades have held in published authority that no appeal from a remand order will lie, except on those grounds specifically enumerated in §1447(d). And federal-officer removal is not available to Defendants here, because, as the district court concluded, there is "[n]o causal connection between any actions Defendants took while 'acting under' federal officers or agencies and the allegations supporting the State's claims." JA.434. For this reason alone, this Court must affirm.

Even if the Court could consider Defendants' other grounds for removal, it should still affirm. Defendants' primary argument, that the State's claims are removable because federal common law "must govern" them (Appellants' Opening Brief ("AOB") at 12, 16), simply restates in different words that the State's claims are preempted by federal law. Under the "well-pleaded complaint rule," "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983). Defendants' other grounds for removal are equally meritless. The district court correctly rejected them. JA.429–36. This Court should affirm.

---

(N.D. Cal. 2018), *appeal pending*, No.18-16663 (9th Cir.), but rejected its conclusion that the plaintiff municipalities' nuisance claims were "necessarily governed by federal common law." JA.424.

[2] All references herein to the United States Code are to Title 28 unless otherwise noted.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under §1447(d) to review the district court's rejection of jurisdiction under the federal officer removal statute, §1442.

## ISSUES PRESENTED

(1) May Defendants obtain review of all possible grounds for removal, or does §1447(d) limit this Court's jurisdiction to reviewing federal-officer removal only?

(2) Did the district court properly grant the State's motion to remand?

## STATEMENT OF THE CASE

### 1. The State's Complaint and Defendants' Removal

The State filed this action in Rhode Island Superior Court. JA.20–164. Chief Judge Smith succinctly summarized the case:

> Climate change is expensive, and the State wants help paying for it. Specifically from Defendants in this case, who together have extracted, advertised, and sold a substantial percentage of the fossil fuels burned globally since the 1960s. This activity has released an immense amount of greenhouse gas into the Earth's atmosphere, changing its climate and leading to all kinds of displacement, death (extinctions, even), and destruction. What is more, Defendants understood the consequences of their activity decades ago, when transitioning from fossil fuels to renewable sources of energy would have saved a world of trouble. But instead of sounding the alarm, Defendants went out of their way to becloud the emerging scientific consensus and further delay changes—however existentially necessary—that would in any way interfere with their multibillion-dollar profits. All while quietly readying their capital for the coming fallout.

JA.420–21 (citations omitted).

Defendants' misconduct has caused and will cause myriad harms in Rhode Island. Sea levels are rising along Rhode Island's 400 mile coastline; temperatures and extreme heat days are increasing; flooding, extreme precipitation events, and drought are becoming more frequent and more severe; the ocean is warming and becoming more acidic. *See, e.g.*, JA.26 ¶8. No party disputes that the State and its citizens face serious—and expensive—threats. JA.119–136, ¶¶197–224.

**2. Remand and Appellate Proceedings**

Defendant Shell Oil Products Company removed this case to the District of Rhode Island asserting seven grounds for federal jurisdiction. JA.165–209. Defendant Marathon Petroleum Company filed a supplemental notice of removal adding an additional ground. JA.13 at Docs. 15–17. The State moved to remand.

Chief Judge Smith granted the State's motion, but temporarily stayed his order. JA.420–436. The court subsequently denied Defendants' motion to extend the stay. JA.19. This Court and the Supreme Court also denied Defendants' motions to stay. Order, Doc. 117499123 (Oct. 7, 2019); JA.19; *B.P. P.L.C., et al. v. Rhode Island*, No.19A391 (U.S. Oct. 22, 2019).

## SUMMARY OF ARGUMENT

This Court has jurisdiction to consider only one asserted basis for federal subject matter jurisdiction: federal-officer removal under §1442. Congress declared in §1447(d) that a district court's remand order is never reviewable, "on appeal or

otherwise," except with respect to federal-officer jurisdiction under §1442 or civil rights jurisdiction under §1443. At least eight circuits have held that §1447(d) prohibits appellate review of remand orders outside those two exceptions. Part I, *infra*. This Court should follow suit.

Private defendants seeking to remove under §1442 bear a heavy, "special burden" to establish that their conduct mandated by a federal superior's "subjection, guidance, or control" caused the plaintiff's injuries. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007). None of the interactions with the federal government on which Defendants rely even approach to the "unusually close" oversight necessary to trigger federal jurisdiction, *id.* at 153, and the Defendants' actions that caused the State's injuries were not controlled or directed by federal officers. Part II, *infra*.

Defendants' other jurisdictional arguments are unreviewable, and meritless besides. Federal common law cannot supply subject matter jurisdiction over the State's claims because (1) ordinary federal preemption does not create jurisdiction and (2) the federal common law on which Defendants rely has been displaced by the Clean Air Act, 42 U.S.C. §§7401 *et seq*. ("CAA"). The State's claims are not "completely preempted" by the CAA; indeed, the CAA's plain text shows Congress's intent to preserve state law, and no court has found the CAA to have complete preemptive force. *See* JA.430. Jurisdiction is lacking under *Grable & Sons*

*Metal Prods., Inc. v. Darue Eng. & Mf'g*, 545 U.S. 308, 313–14 (2005), because no substantial federal issues are necessarily raised and actually disputed, and because stripping the state courts of jurisdiction over the claims asserted here would disrupt the federal-state balance established by Congress. Parts III.A–C, *infra*.

The action does not arise out of or in connection with activity on the outer continental shelf ("OCS"), and thus falls outside the original jurisdiction of the Outer Continental Shelf Lands Act, 43 U.S.C. §1349(b) ("OCSLA"). No federal enclave is the "locus" of any of the State's claims. None of the State's claims relate to any bankruptcy proceeding, and they fall within the police powers exception to federal bankruptcy jurisdiction regardless. Nor are these claims within federal admiralty jurisdiction. Parts III.D–G, *infra*; *see also* JA.433.

## ARGUMENT

### I. This Court Only Has Jurisdiction to Consider Federal-Officer Removal.

Section 1447(d) limits this Court's jurisdiction to reviewing whether the district court properly rejected federal-officer removal. Congress prohibited review of remand orders with two narrow exceptions:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 [federal-officer removal] or 1443 [civil rights removal] of this title shall be reviewable by appeal or otherwise.

§1447(d). So "long as a district court's remand is based ... on lack of subject-matter

jurisdiction ... a court of appeals lacks jurisdiction to entertain an appeal of the remand order under §1447(d)." *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28 (1995).

For four decades, the courts of appeals have held remand orders unreviewable except to the limited extent they rest on the lower courts' rejection of federal-officer or civil rights removal. Though the First Circuit has not ruled on this question, the Second,[3] Third,[4] Fourth,[5] Fifth,[6]

[3] *State Farm Mut. Auto. Ins. Co. v. Baasch*, 644 F.2d 94, 97 (2d Cir. 1981) (per curiam) ("Insofar as the appeal challenges denial of removal under [§1441(a)], it is dismissed for want of appellate jurisdiction. Insofar as it can be read as objecting to denial of removal under [§1443], the order is affirmed.").

[4] *Davis v. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997) (reviewing remand order as to §1443, holding "insofar as the [appellants'] appeal challenges the district court's rulings under [§1441], we must dismiss the appeal for want of appellate jurisdiction"); *Pennsylvania ex rel. Gittman v. Gittman*, 451 F.2d 155, 157 (3d Cir. 1971).

[5] *Noel v. McCain*, 538 F.2d 633 (4th Cir. 1976) (dismissing appeal except as to civil rights jurisdiction: "Jurisdiction to review remand of a §1441(a) removal is not supplied by also seeking removal under §1443(1).")

[6] *Gee v. Texas*, 769 F. App'x 134 (5th Cir. 2019) (per curiam) ("Where a party has argued for removal on multiple grounds, we only have jurisdiction to review a district court's remand decision for compliance with [§§1442 or 1443]."); *City of Walker v. Louisiana through Dep't of Transp. & Dev.*, 877 F.3d 563, 566 n.2 & n.4 (5th Cir. 2017); *Robertson v. Ball*, 534 F.2d 63, 65 (5th Cir. 1976); *but see Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292, 296 (5th Cir. 2017) (accepting jurisdiction to review entire remand order in addition to §1442).

Sixth,[7] Eighth,[8] Ninth,[9] and Eleventh[10] Circuits have held that the rejection of any other asserted grounds for removal remains unreviewable even when they accompany arguments under §§1442 or 1443.[11]

Defendants rely on two contrary cases: *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 811 (7th Cir. 2015), and *Mays v. City of Flint, Mich.*, 871 F.3d 437, 442 (6th

---

[7] *Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 567 (6th Cir. 1979) (affirming remand of case removed pursuant to §1443, and holding that "to the extent that removal is based upon [§1441], the remand order of the district court is not reviewable on appeal"); *Appalachian Volunteers, Inc. v. Clark*, 432 F.2d 530, 534 (6th Cir. 1970).

[8] *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1229 (8th Cir. 2012) ("[W]e do lack jurisdiction to review the district court's determination concerning the availability of federal common law to resolve this suit, … Nonetheless, we retain jurisdiction to review the district court's remand on the issue of whether the federal officer removal statute, [§1442(a)(1)], applies."); *Thornton v. Holloway*, 70 F.3d 522, 524 (8th Cir. 1995).

[9] *Patel v. Del Taco, Inc.*, 446 F.3d 996, 998 (9th Cir. 2006) ("The district court determined that removal was not proper under either [§1441] or §1443(1). We lack jurisdiction to review the remand order based on §1441."); *Clark v. Kempton*, 593 F. App'x 667, 668 (9th Cir. 2015); *Carter v. Evans*, 601 F. App'x 527, 528 (9th Cir. 2015); *McCullough v. Evans*, 600 F. App'x 577, 578 (9th Cir. 2015); *U.S. Bank Nat'l Ass'n. v. Azam*, 582 F. App'x 710, 711 (9th Cir. 2014).

[10] *Alabama v. Conley*, 245 F.3d 1292, 1293 (11th Cir. 2001) ("[W]e dismissed Conley's appeal to the extent it challenges the district court's remand order based on §§1441 and 1447(c), but allowed Conley's appeal to proceed to the extent he is challenging the district court's implicit determination that removal based on §1443 was improper.").

[11] The Tenth Circuit followed the majority position in unpublished decisions. *See Sanchez v. Onuska*, 2 F.3d 1160 (Table), 1993 WL 307897 (10th Cir. 1993) (where a defendant removes under both §§1441 and 1443, "the portion of the remand order ... concerning the §1441(c) removal is not reviewable and must be dismissed for lack of jurisdiction").

Cir. 2017).[12] But *Mays* cited *Lu Junhong* as its sole case support, and *Lu Junhong* rested on an inapposite analogy to *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996).[13] *Yamaha* did not involve a remand order, but an order certifying an issue for interlocutory appeal under §1292(b), which implicates different policies than §1447(d).

Section 1292(b) permits interlocutory review whenever a pretrial order raises a "controlling question of law as to which there is substantial ground for difference of opinion," and immediate review would expedite resolution of the case. *Yamaha*, 516 U.S. at 205. *Yamaha* held that an appellate court may, in its discretion, review any question "fairly included within the certified order," not just "the particular [controlling question of law as] formulated by the district court." *Id.* at 205. *Yamaha*'s reasoning makes sense for §1292(b). In such cases, where the district and appellate courts agree that "immediate appeal from the order may materially advance

---

[12] Even in their respective Circuits, *Lu Junhong* and *Mays* are of questionable import. Indeed, the Seventh Circuit has not applied *Lu Junhong*'s expanded view of §1447(d) in other decisions. The *Mays* opinion, more glaringly, ignored the Sixth Circuit's own longstanding precedent. *See* n.7, *supra*. In the Sixth Circuit, that earlier authority controls unless and until it is abrogated *en banc*. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001).

[13] In a footnote, Defendants cite *Decatur Hosp. Auth. v. Aetna Health, Inc.*, 854 F.3d 292 (5th Cir. 2017), which likewise relied on *Lu Junhong*. But as Defendants acknowledge, the Fifth Circuit has issued conflicting authority on this question and most cases have followed the majority rule. *See* n.6, *supra*.

the ultimate termination of the litigation," *see* §1292(b), allowing appellate review furthers the statutory goal of judicial efficiency.

Congress expressly intended §1447(d), however, to ensure that a district court order granting remand "is not reviewable by appeal *or* mandamus, *even if erroneous*." *Gonzalez-Garcia v. Williamson Dickie Mfg. Co.*, 99 F.3d 490, 491 (1st Cir. 1996) (citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 343 (1976)). While Congress subsequently carved out narrow exceptions where cases raise the risk of state court anti-federal bias in matters implicating civil rights or involving federal officers, those carve-outs do not extend to other potential grounds for removal. Defendants' proposed gloss of §1447(d) would mandate appellate review of all purported grounds for removal, as of right, if the removing defendant merely asserts federal-officer jurisdiction too.

Importantly, Defendants' reading only matters where the district court *rejects* federal-officer or civil rights jurisdiction (since §1447(d) only applies to orders *granting* remand). If the appellate court disagrees and finds §1442 or §1443 removal proper, it has no need to address any other bases for removal. But if the appellate court affirms a remand order's rejection of §1442 or §1443 removal, Defendants' reading would force the appellate court to consider other grounds for removal rejected in the order, and potentially still reverse. Thus: a defendant whom the district and appellate courts determine is *not* entitled to remove under §1442 or

§1443 could have an otherwise unreviewable remand order reversed because the case "was removed pursuant to section 1442 or 1443"— an absurd result.

Defendants' reliance on the Removal Clarification Act of 2011, Pub. L. 112-51, 125 Stat. 545 & 546, is meritless. That Act amended §1447(d) by inserting the words "1442 or" before "1443," with no other changes. *Every* appellate decision predating the Act (including those decided after *Yamaha*) limited review of remand orders to §1447(d)'s only then-enumerated exception, civil rights removal under §1443. Congress knew in 2011 of the circuit precedents dating back to the 1970s construing §1447(d), *see supra* nn.3–11, and its addition of "1442 and" cannot reasonably be understood as abrogating those cases *sub silentio*.[14]

## II. The District Court Correctly Rejected Federal-Officer Removal.

The district court disposed of Defendants' federal-officer arguments because none of the conduct for which they were sued was "justified by their federal duty." JA.434 (quoting *Mesa v. California*, 489 U.S. 121, 131–32 (1989)).

"Historically, removal under §1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S.

---

[14] Defendants' reliance on Congress's use of "order" in both §1292(b) and §1447(d) fails. "[I]dentical language may convey varying content when used in different statutes," and statutory language must be construed in specific contexts. *Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) (plurality).

232, 241 (1981). Because Congress worried that state court lawsuits against federal officials might subject them to "local prejudice" or anti-federal hostility, removal afforded federal officers a "federal forum in which to assert federal immunity defenses." *Id.* at 150.

Section 1442(a)(1) extends the same jurisdictional protections to private individuals and companies "who act under the direction of federal officers." *Camacho v. Autoridad de Teléfonos de Puerto Rico*, 868 F.2d 482, 486 (1st Cir. 1989). The removing party must also "show that there is a 'causal connection' between the acts taken under color of office and the conduct for which the plaintiff has sued," by showing that conduct was done "for or relating to" the command of the federal superior. *E.g.*, *Jones*, 22 F.3d at 395.[15]

**A. Defendants Have Not Shown They "Acted Under" Federal Officers.**

Three Defendants contend they "act[ed] under" federal officers when they extracted or sold fossil fuels pursuant to long-expired contracts with the government or leases of federal land. AOB40. Those contracts and leases have nothing to do with the wrongful conduct alleged in the State's complaint. Even if they did, the contracts and leases do not satisfy §1442 because they do not show any Defendant was

[15] A removing defendant must also "allege a 'colorable' federal defense." *Jones v. Pineda*, 22 F.3d 391, 395 (1st Cir. 1994) (quoting *Mesa*, 489 U.S. at 136). Defendants have not satisfied that element, having averred only generically that federal preemption or the federal contractor defense might apply.

"involve[d in] an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior," under the government's "subjection, guidance, or control." *Watson*, 551 U.S. at 151–52.

The Supreme Court has held unambiguously that "the help or assistance necessary to bring a private party within the scope of [federal-officer jurisdiction] statute does *not* include simply *complying* with the law," including garden variety contractual obligations. *Watson*, 551 U.S. at 152. Only direct, specific, intensive government involvement directing a private company qualifies as "acting under" a federal officer for removal. In *Camacho*, for example, this Court affirmed removal where two telephone company defendants helped the government tap the plaintiffs' telephones as part of a criminal investigation. 868 F.2d at 484 & n.1. The defendants' "involvement in the electronic surveillance was strictly and solely at federal behest," and the telephone companies were therefore "acting under" a federal officer. *Id.* at 486–87. The circuits are in accord that although §1442 should not be "frustrated by a narrow, grudging interpretation," *Willingham v. Morgan*, 395 U.S. 402, 407 (1969), mere adherence to an arms-length contract with the government does not establish the necessary subjection, guidance, or control.[16]

[16] *Compare Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015) ("acting under" element not satisfied due to "lack of any evidence of the requisite federal control or supervision over the handling of" illegal fireworks stored by defendant under contract with government after seizure), *with Sawyer v.*

This case is nothing like those where private defendants have demonstrated the requisite level of federal subjection and control to satisfy the "acting under" element. Defendants first point to a 1944 Unit Plan Contract ("UPC") between Standard Oil (a Chevron predecessor) and the Navy governing the "joint operation and development" of the Elk Hills strategic petroleum reserve. AOB40; JA.210–12; JA.222–41. "Under the UPC, Standard Oil and the United States ... agreed to operate the Elk Hills Reserve as a unit and allocate production costs, based on the parties' ownership interests in the underlying oil and gas." *Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747, 753 (2013). In "consideration for Standard curtailing its production" to retain the reserve for potential future use, Standard held rights to

---

*Foster Wheeler LLC*, 860 F.3d 249, 253 (4th Cir. 2017) (removal proper where government exercised "intense direction and control" over manufacturing and labeling asbestos and had superior knowledge to defendant on subject of failure to warn claim); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) (removal proper for rural electricity cooperatives that "exist to provide a public function conceived of and directed by the federal government" and "wor[k] closely with" the Department of Agriculture); *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017) (insurance company acted under federal officer in pursuing subrogation lien where it was "obliged" to do so by federal law and fulfilled "vital federal interest" in pursuing lien on behalf of federal agency); *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016) (aircraft manufacturer was "acting under" federal government when it manufactured a military plane the government otherwise would have had to manufacture itself); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998) ("acting under" element satisfied by "the government's detailed specifications concerning the make-up, packaging, and delivery of Agent Orange, the compulsion to provide the product to the government's specifications, and the on-going supervision the government exercised over the formulation, packaging, and delivery of Agent Orange").

extract specified volumes of oil and gas from certain zones of the pool. *United States v. Standard Oil Co. of Cal.*, 545 F.2d 624, 626 (9th Cir. 1976). The contract *reduced* Standard's production, and Standard could have complied with the contract by producing no oil at all. There is no evidence that Standard or Chevron ever produced any oil or gas from Elk Hills under the direction of any federal officer. Nobody extracted any substantial oil or gas from the Elk Hills reserve until the 1970s, when Congress opened it to private, for-profit exploration and extraction. *Chevron v. United States*, 110 Fed. Cl. at 754.

Defendants' assertion that the UPC required Standard (80 years ago) to extract a specified amount of oil from the reserve for the Navy mischaracterizes the record. The UPC required both parties to maintain the reserve in a manner that would leave it *capable* of producing at a certain level, if ever required by a national crisis. It did not require Standard to extract anything, either on its own account or under a federal officer's direction. *See* JA.232 §4(b).[17]

Next, Defendants rely on two unexecuted oil and gas leases for deep-water drilling on the OCS that "certain Defendants" claim to have entered with the

---

[17] The contract provides: "Until Standard shall have received [its share], the Reserve shall be developed and operated in such manner and to such extent as will … *permit production* from the Shallow Zone to be maintained at a rate *sufficient to produce therefrom not less than 15,000 barrels of oil per day … or such lesser amount as may be fixed by the … Navy….*" (UPC§4(b), JA 232 (emphases added).) The contract "expressly recognized" the UPC did not "authorize the production of any of Navy's share" absent a further authorization from Congress. (UPC Recital 8, JA 228.)

Department of Interior. AOB40; JA.197–98; JA.214–21. Defendants cite no case—and the State has found none—where a private party's lease of property or mineral rights from the federal government transforms later activity on the leased property into conduct "acting under" a federal officer. The leases here do not require Defendants to extract fossil fuels in a particular manner, dictate the composition of oil or gas to be refined, or remotely govern the content or methods of a lessee's communications about fossil fuel products and their relationship to the global climate crisis.

Finally, Defendants refer to contracts under which CITGO supplied retail fuel to the Navy Exchange Service Command (NEXCOM), for resale at a discount to active duty military, retirees, reservists, and their families. AOB40. If a company's provision of a commodity to the government triggered federal-officer jurisdiction, every state-law consumer protection case against a company that ever sold its products to the government would be removable. Such an expansive view of §1442(a)(1) would ignore the statute's historical purpose and federalize huge swaths of state common law contract and tort litigation. Courts of appeals have rejected this view. *See Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018) (unpublished) (affirming remand because "invoices for sales of PCB products to the federal government" introduced by Monsanto "show[ed] only that the federal

government purchased off-the-shelf PCB products," which could not support removal).

Finally, nothing about any of these contracts suggests that holding Defendants accountable in state court might subject them to "local prejudice" or anti-federal hostility. *Arizona*, 451 U.S. at 241.

### B. No Nexus Exists Between Defendants' Challenged Actions and the Directions of Any Federal Officer.

Federal-officer jurisdiction separately requires a "causal relationship between the act undertaken at the government's direction and the harms the plaintiff alleges." *See, e.g.*, *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 203 (D. Mass. 2008) (citing *Mesa*, 489 U.S. at 131–32). The district court found Defendants failed to satisfy this element because they "ha[d] not shown that a federal officer controlled their total production and sales of fossil fuels, nor is there any indication that the federal government directed them to conceal the hazards of fossil fuels or prohibited them from providing warnings to customers," the central conduct at issue. JA.365.

The State's allegations have nothing to do with what Defendants claim they have done under federal direction. Importantly, no federal officer directed any Defendant to mislead the public, or to promote products based on disinformation. Chief Judge Smith explained: "Defendants cannot show the alleged promotion and sale of fossil fuels abetted by a sophisticated misinformation campaign were justified by their federal duty." JA.434 (citations omitted); *see e.g., In re Methyl Tertiary*

*Butyl Ether (“MTBE”) Prods. Liab. Litig.*, 488 F.3d 112, 112 (2d Cir. 2007) (rejecting federal-officer removal because no causal nexus existed where federal regulations “say nothing” about marketing and other tortious conduct); *cf. e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 253 (4th Cir. 2017) (rejecting removal in light of evidence that government had superior knowledge and directed specific warnings challenged by plaintiffs).

Defendants assert, wrongly, that they satisfy the causal nexus requirement because the State’s claims “do not turn on Defendants’ alleged ‘misinformation campaign.’” AOB41–42. But the complaint alleges Defendants’ misleading marketing “prevented reasonable consumers from forming an expectation that fossil fuel products” would be dangerous, and prevented them from mitigating potential harms, which in turn created and contributed to the State’s design defect, nuisance, trespass, and harms to public trust resources injuries.[18]

No federal-officer removal jurisdiction exists.

---

[18] *See, e.g.*, JA.144 ¶245; JA.147 ¶256; JA.151–52 ¶267(c)–(d); JA.154 ¶278; *see also*, *e.g.*, *State v. Lead Indus., Ass’n, Inc.*, 951 A.2d 428, 451 (R.I. 2008) (causation in nuisance cases “involves an assessment of foreseeability, in which we ask whether the injury is of a type that a reasonable person would see as a likely result of his conduct”); *Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 191 (1971) (whether defective product is unreasonably dangerous for purposes of strict product liability “takes into account the consumer’s or user’s knowledge of danger”); *cf. In re MTBE Prods. Liab. Litig.*, 725 F.3d 65 (2nd Cir. 2013) at 119 (affirming common law trespass verdict against fossil fuel companies where defendants “had good reason to know or expect” their products would invade plaintiff’s land).

## III. The District Court Properly Rejected Defendants' Other Removal Grounds.

If the Court determines it has jurisdiction to consider Defendants' other removal theories, they fail. Removal statutes are "strictly construed," and "defendants have the burden of showing the federal court's jurisdiction." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). "In light of this burden, and of the important federalism concerns at play in considering removal jurisdiction," all doubts must be resolved in favor of remand. *Rosselló-González v. Calderón-Serra*, 398 F.3d 1, 11 (1st Cir. 2004).

Where, as here, a sovereign state brings an action "in state court to enforce its own ... laws" and "alleges only state law causes of actions brought to protect [state] residents," the "claim of sovereign protection from removal arises in its most powerful form." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012). *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011) (same); *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008) (same).

### A. Plaintiff's Claims Do Not Arise Under Federal Law.

Defendants' principal argument, that this case is removable because the State's causes of action supposedly "arise under federal [common] law" and "only federal law can provide the rule of decision," AOB15, is precluded by the well-

pleaded complaint rule and decades of precedent. Even if it were not, the federal common law on which Defendants rely has been displaced by the CAA.

### 1. Defendants' "Arising Under" Theory Is Merely a Veiled Preemption Argument.

#### a. Defendants' Novel "Choice of Law" Analysis Is Baseless.

The "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391–92 (1987). The rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*. at 392.

There are two relevant exceptions to the well-pleaded complaint rule. The first is complete preemption, which provides removal jurisdiction in the rare circumstance where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); Part III.C, *infra*. The second — the "federal ingredient," "embedded federal question," or "substantial federal question" test — was addressed in *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mf'g*, 545 U.S. 308 (2005). It arises when a substantial federal question is necessarily raised and actually disputed on the face of

the plaintiff's complaint, and the balance of federal-state responsibility favors the case being heard in a federal forum. *See id.* at 314–15; Part III.B, *infra*.

Ordinary conflict or field preemption, unlike "complete" preemption, cannot supply federal jurisdiction. "[P]reemption, without more, does not convert a state claim into an action arising under federal law." *Metro. Life Ins. Co.*, 481 U.S. at 65; *Caterpillar*, 482 U.S. at 391–92; *R.I. Fishermen's All., Inc. v. Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49–50 (1st Cir. 2009) ("[A] federal preemption defense to a state-law cause of action is insufficient to confer federal question jurisdiction"). Defendants' formulation of the State's claims "as *governed* by federal common law," AOB15 (emphasis added), rather than *preempted* by it, is a semantic distinction without difference and cannot support removal.

*Complete* preemption can confer federal question jurisdiction when that term of art applies, *see Caterpillar*, 482 U.S. at 393, but federal common law cannot completely preempt state law, and Defendants have not argued otherwise. AOB18. Complete preemption "depends on the existence of palpable evidence that Congress intended to displace completely a particular category of state-law causes of action, as manifested by [a] federal *statute's* language, overall structure, and legislative history." *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 99–100 (1st Cir. 2007) (no complete preemption by federal Copyright Act) (emphasis added).

Defendants' assertion that the Court must answer a preliminary, free-floating, "jurisdictional choice-of-law question," AOB18–19, is baseless, and Defendants misrepresent every appellate case they cite for this argument. In each, the plaintiff either explicitly alleged federal claims in federal court in the first instance and there was no question of jurisdiction;[19] or the court analyzed removal under the complete preemption or embedded federal question exceptions to the well-pleaded complaint rule;[20] or the court rejected removal jurisdiction.[21]

---

[19] *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 310 (1981) ("*Milwaukee II*") ("Illinois filed a complaint in the United States District Court … under federal common law …."); *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 582 (1973) ("The United States initiated this litigation … in the United States District Court …."); *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 632 (1981) (plaintiff "filed a civil action in the United States District Court"); *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 302 (1947) (federal common law subrogation claim brought by United States in federal district court); *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 384 (7th Cir. 2007) (plaintiff sued in district court asserting claim for lost package under federal common law of common air carriers).

[20] In *López-Muñoz v. Triple-S Salud, Inc.*, the court reversed the denial of remand, and discussed the "artful pleading doctrine, … a jurisdiction-granting exception, known as complete preemption." 754 F.3d 1, 5 (1st Cir. 2014) (emphasis added). In *Almond v. Capital Props., Inc.*, the court found removal proper under a pre-*Grable* articulation of the embedded federal question exception: the "well-pleaded complaint necessarily 'requires resolution of a substantial question of federal law.'" 212 F.3d 20, 22–23 (1st Cir. 2000) (citation omitted). In *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, the court affirmed denial of remand because the plaintiff's claims were completely preempted. 132 F.3d 824, 831 (1st Cir. 1997).

[21] *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1185 (9th Cir. 2002) (reversing denial of remand, holding plaintiff's claims "do not arise under federal

Defendants' reliance on *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir. 1997), is unavailing. That court affirmed removal on a "narrow," "necessarily limited" holding that a "cause of action against an interstate air carrier for claim for property lost or damaged in shipping arises under federal common law." *Id.* at 926–29; nn.15&16. The court emphasized the "historical availability of [a federal] common law remedy" against air carriers, which the Airline Deregulation Act of explicitly preserved. *Id.* at 928–29; n.15.

*Grable* limits *Sam L. Majors* even more. The Supreme Court expressly intended *Grable* to "bring some order to th[e] unruly doctrine" of which state law claims arise under federal law for removal purposes, precisely because of the "general confusion" generated by cases like *Sam L. Majors*. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also id.* ("In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first."). The law is now clear: only state law claims

common law"); *Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 126 (2d Cir. 1999) (affirming dismissal of claim brought in district court because "federal common law does not apply in this breach of contract suit"). To the extent *Wayne* can be read as applying a choice of law analysis to reject jurisdiction, its analysis does not survive *Grable*, which defined the "'special and small' category of cases in which arising under jurisdiction still lies" over claims pleaded solely under state law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

that are completely preempted, or those that satisfy *Grable*,[22] support removal. *See* Part III.B, *infra*.

Defendants' argument is a double evasion: an attempted end-run around both the well-pleaded complaint rule and the rule's exceptions. This Court must reject it.

**b. The "Artful Pleading" Exception to the Well-Pleaded Complaint Rule Is Co-Extensive With Complete Preemption.**

Defendants' invocation of the "artful pleading doctrine," AOB16, misses the mark. That doctrine is simply another name for complete preemption:

> [T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented. ... This jurisdiction-granting exception, *known as complete preemption*, comprises a narrow exception to the well-pleaded complaint rule.

*López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) (emphasis added). This Court has repeatedly stated its "skeptic[ism] of the applicability of the artful

[22] *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996), is similarly inapposite. There, a military subcontractor's claims against a prime contractor were removable because "on government contract matters having to do with national security, state law is totally displaced by [the] federal common law" of government procurement. *Id.* at 955. It is unclear whether the court applied a pre-*Grable* version of the substantial federal question test, complete preemption, or another test. Whatever guided that court's analysis in 1996, the jurisdictional question of whether the plaintiff's state law claims arose under federal law would now be controlled by *Grable*. *New SD* has been criticized for that reason. *See Babcock Servs., Inc. v. CH2M Hill Plateau Remediation Co.*, 2013 WL 5724465, at *4 (E.D. Wash. 2013) (premise of *New SD* is "no longer sound" after *Grable*); *Raytheon Co. v. Alliant Techsystems, Inc.*, 2014 WL 29106, at *4 (D. Ariz. 2014) (same).

pleading doctrine outside of complete federal preemption of a state cause of action," and has consistently limited it to that context. *Rosselló-González*, 398 F.3d at 11–12; *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 17 (1st Cir. 2018) ("complete preemption" is "sometimes referred to as the artful pleading doctrine"); *Negrón-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 6 (1st Cir. 2008) (same); *Metheny v. Becker*, 352 F.3d 458, 460 (1st Cir. 2003) (same); *see also Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 471 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts an asserted state-law claim.").

Defendants cite no appellate authority adopting their novel artful pleading theory. Their reliance on *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), and *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981) ("*Milwaukee II*"), AOB16–17, is misplaced. In *Ouellette,* the action was removed from state court on diversity grounds, and the Court considered only whether the Clean Water Act preempted the causes of action as alleged—not whether any basis for jurisdiction existed beside diversity. 479 U.S. at 500. *Milwaukee II* was also pleaded originally under federal common law in federal district court. 451 U.S. at 309–10. Neither case helps Defendants.

### 2. Defendants Cannot Premise Removal on a Federal Common Law That No Longer Exists.

Even if federal common law could provide a basis for removal, Defendants' argument still fails because the CAA has displaced any relevant federal common law. *See* JA.428 (citing *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410 at 424; *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), *cert. denied*, 569 U.S. 1000 (2013)); AOB27–28.[23]

Federal common law is interstitial—created by courts to fill statutory interpretive gaps—and always subject to displacement by statute. Supervening statutory authority displaces *all* federal common law within its ambit including whatever preemptive effect the common law may have had. *See, e.g.*, *AEP*, 564 U.S. at 423. The Supreme Court made clear in *AEP* that "[i]n light of our holding that the CAA displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect *of the federal Act*." *Id.* at 429 (emphasis added); *see also Kivalina*, 696 F.3d at 866 (Pro, J., concurring) ("Once federal common law is displaced, state nuisance law becomes an available option to the extent it is not preempted by federal law.").

---

[23] The district court below did not determine which, if any, federal common law claims survive under the Clean Air Act, because it found Defendants' arguments failed under the well-pleaded complaint rule. *See* JA.428.

Defendants contend Congress intended the CAA to only displace common law *remedies*, and that an empty husk of federal common law still "governs the [State's] claims"—*i.e.*, preempts them. AOB27–28. It would be odd enough if there were a federal common law that "govern[ed]" and therefore preempted state-law claims yet provided no remedy. But Defendants must also admit federal common law no longer provides any substantive rules governing conduct, either; that is now the function of the CAA. *See, e.g.*, *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 314 n.7 (1981). Defendants do not suggest what federal common law actually *does* after *AEP*, other than supposedly provide removal jurisdiction for them.

Nothing in *AEP* or *Kivalina*, let alone the CAA, supports Defendants. When "Congress addresses a question previously governed by a decision rested on federal common law ... the need for such an unusual exercise of law-making by the federal courts disappears." *AEP*, 564 U.S. at 423. With it disappears whatever common law principles might have applied, for "it is primarily the office of Congress, not the federal courts, to prescribe national policy in areas of special federal interest." *Id*. at 423–24; *see also City of Milwaukee*, 451 U.S. at 315 ("Our commitment to the separation of powers is too fundamental to continue to rely on federal common

law ... when Congress has addressed the problem." (quotations omitted)); *see also* *Kivalina*, 696 F.3d at 857.[24] No appellate common law survives the CAA.

*AEP* and *Kivalina* make clear that the only preemption issue that may arise in this case is a defense left for the state court to consider on remand: whether the CAA preempts the State's Rhode Island-law claims. The question presented here is far narrower: whether the CAA *completely* preempts Plaintiff's claims, which it does not. *See* Part III.C *infra*

**B. *Grable* Does Not Support Removal.**

Defendants' attempt to shoehorn the State's claims into the "'special and small' category of [state law] cases" that are removeable under *Grable* fails. *See*

[24] The State does not concede that any federal common law would apply even in the absence of the CAA. Far from intruding on areas of unique federal interest, the State's claims rest on Defendants' tortious failures to warn and campaigns of deception and denial, which are within the several states' traditional authority to police. *See, e.g., Am. Fuel & Petrochem. Mfrs. v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2043 (2019) ("It is well settled that the states have a legitimate interest in combatting the adverse effects of climate change on their residents."); *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 687 (6th Cir. 2015) ("[A]ir pollution prevention and control is the primary responsibility of individual states and local governments…."); *cf. Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1324 (5th Cir. 1985) (*en banc*) (claims against asbestos manufacturers "cannot become 'interstate,' in the sense of requiring the application of federal common law, merely because the conflict is not confined within the boundaries of a single state"); *In re Agent Orange Prod. Liab. Litig.*, 635 F.2d 987, 994 (2d Cir. 1980) (despite federal interest in millions of veterans exposed to Agent Orange while serving in Vietnam, "there is no federal interest in uniformity for its own sake.... The fact that application of state law may produce a variety of results is of no moment," and is "the nature of a federal system.").

*Gunn v. Minton*, 568 U.S. 251, 258 (2013). Under *Grable*, federal jurisdiction exists over a state-law complaint where a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. Where, as here, state law defines all claims and all duties and remedies, and no federal standard is intrinsic to plaintiff's claims, *Grable* does not provide jurisdiction.

*Grable* jurisdiction attaches only where the plaintiff's affirmative case "will necessarily require application" of federal law, such that the plaintiff cannot meet its *prima facie* burden without relying on an "embedded" federal standard. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). *Id.* The district court summarized: "If complete preemption is a state-law cloche covering a federal-law dish, *Grable* jurisdiction is a state-law recipe requiring a federal-law ingredient." JA.431. "[C]ourts must be cautious in exercising jurisdiction of this type, which lies at 'the outer reaches of §1331.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Merrell Dow*, 478 U.S. at 810); *see also Metheny*, 352 F.3d at 460 (*Grable* "should be applied with caution").

Defendants assert the State's claims are "bound up with," "implicate," or "see[k] to replace" various ill-defined "federal interests," laws, and agency

activities. AOB31, 34, 37. None of these assertions establish federal law as a necessary element of any of the State's claims. "These are, if anything, premature defenses, which even if ultimately decisive, cannot support removal." JA.433.

### 1. The State's Complaint Does Not "Necessarily Raise" Any "Actually Disputed" Issues of Federal Law.

A complaint satisfies *Grable*'s first element only where a "question of federal law is a *necessary element* of one of the well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added). The purported federal law issue must therefore be "decisive to the dispute." *One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013). "[T]he mere fact that a claim or defense requires an explanation of a federal statutory scheme as background does not mean that a complaint 'necessarily raise[s] a stated federal issue.'" *Narragansett Indian Tribe v. R.I. Dep't of Transp.*, 903 F.3d 26, 32 (1st Cir. 2018) (no *Grable* jurisdiction over breach of contract claim between federally recognized tribe and state agencies). If a federal issue is only "lurking in the background," removal is improper. *Pinney v. Nokia, Inc.*, 402 F.3d 430, 445 (4th Cir. 2005).

Nothing in the State's *prima facie* case "requir[es] resolution of a substantial question of federal law, or even interpreting federal law." *Franchise Tax Bd.*, 463 U.S. at 13. Defendants insist instead that elements of some of the State's causes of action conflict with various federal regulatory and executive determinations. AOB31–37. That is both insufficient and wrong.

### a. Defendants' "Collateral Attack," "Navigable Waters" and "Duty to Disclose" Arguments Are Not Necessarily Raised in the State's Complaint.

Contrary to Defendants' contentions, the State's nuisance claims would not "invite a state court factfinder to adjudicate the reasonableness of [various] federal agencies' balancing of harms and benefits" with respect to fossil fuels and carbon emissions or activities of the Army Corps of Engineers. *See* AOB33. Even if the state tort duties underlying the State's claims weighed identical factors as the regulations that Defendants cite (they do not), that would at most present a potential federal preemption defense. *See* JA.432. Every duty and basis for relief asserted in the State's Complaint arises from the laws of Rhode Island.[25] Courts of appeals have routinely rejected *Grable* jurisdiction in cases where, as here, the alleged tort and injuries occurred against a backdrop of federal regulation, but no claim turns on federal law as an essential element to establish the right to relief.[26]

---

[25] *Compare* JA.137–42, ¶¶225–37 *with Citizens for Preservation of Waterman Lake v. Davis*, 420 A.2d 53, 59 (R.I. 1980) (elements of public nuisance claim); JA.142–50, ¶¶238–63 *with Raimbeault v. Takeuchi Mfg. (U.S.) Ltd.*, 772 A.2d 1056, 1063–64 (R.I. 2001) (defining strict product liability for design defect and failure to warn); JA.150–55, ¶¶264–84 *with Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013) (elements of negligent products liability); JA.155–57, ¶¶285–93 *with Bennett v. Napolitano*, 746 A.2d 138, 141 (R.I. 2000) (defining trespass); JA.157–60, ¶¶294–305 *with* Rhode Island Const., Art. I, §17 (creating right of public to enjoy sea and shoreline); JA.160–62 ¶¶306–15 *with* R.I. Gen. Laws §10-20-1 (State Environmental Rights Act).

[26] *See, e.g.*, *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947–48 (10th Cir. 2014) (no federal question jurisdiction over a breach of

The State's allegation that Defendants withheld known dangers from fossil fuel products does not trigger considerations of any federal "duty to disclose." Defendants' failure to disclose known harms to both regulators and the public is merely *relevant evidence* to show that they violated state tort duties, for example to show knowledge that their products were defective. No federal disclosure duties are essential elements of any of the State's claims under *Grable*. And, "so long as 'even one theory' for each of the [plaintiff's] claims does *not* require 'interpretation of federal law,' resolution of the federal-law question is not necessary to the disposition of their case." *Burrell, supra*, 918 F.3d at 383 (reversing denial of remand where plaintiff alleged state law claims against manufacturer of defective contraceptive device heavily regulated by FDA).

Defendants' invocation of navigable waters, similarly, presents at most an irrelevant preemption defense. That some mitigation infrastructure might someday require a federal permit does not mean a federal question is "necessarily raised."

---

contract claim even though contract required approval from U.S. Secretary of the Interior); *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1032 (9th Cir. 2011) ("[t]he mere fact that the Secretary of the Interior must approve oil and gas leases does not raise a federal question"); *Pinney*, 402 F.3d at 449 (rejecting argument that claims were "removable under the substantial federal question doctrine because of a connection between the federal scheme regulating wireless telecommunications and the [plaintiffs'] state claims" because state law claims did not "rise or fall on the resolution of a question of federal law").

AOB34–35. No element of any claim here raises—much less requires—"evaluation of the adequacy of complex Corps decisions." AOB35.

In Defendants' cases, removal was upheld because federal law directly established the plaintiff's right to relief. In *Board of Commissioners of Southeast Louisiana Flood Protection Authority v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 720–21 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 420 (2017), the plaintiff alleged the defendants increased regional flood risk by dredging canals. The plaintiff's claims were framed under state law, but the court found removal proper because the complaint "dr[ew] on [the federal Rivers and Harbors Act] as the *exclusive basis* for holding Defendants liable for some of their actions," which, under Louisiana law, were not subject to the duties the plaintiffs sought to enforce. *Id.* at 722–23 (emphasis added). Therefore, "[t]he absence of any state law grounding for the duty ... for the Defendants to be liable means that that duty would have to be drawn from federal law." *Id.* at 723.[27] Here the relief the State seeks and the duties it seeks to enforce are drawn from traditional precepts of Rhode Island law.

[27] Defendants' other cases at AOB.33, n.12, are likewise inapposite. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (affirming removal of state claim challenging federally approved "Stock Borrow Program," where plaintiff alleged program "by its mere existence, hinders competition," and "directly implicate[d] actions taken by the [SEC] in approving the creation of the Stock Borrow Program and the rules governing it"); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) (no subject-matter jurisdiction over state tort claim against airline; "that some standards of care used in tort litigation

**b. Defendants' Invocation of Foreign Relations Is No Basis for Federal Jurisdiction.**

Defendants argue the State's claims are federal because "global warming has been and remains the subject of international negotiations." AOB36–37. Even if that were relevant—it is not, because the State has not asked to modify any "international negotiation" or for any other global relief—it would not satisfy *Grable*, because the foreign relations doctrine is another preemption defense. *See Gingery v. City of Glendale*, 831 F.3d 1222, 1228 (9th Cir. 2016) ("Under the foreign affairs doctrine, state laws that intrude on th[e] exclusively federal power [to administer foreign affairs] are preempted.").

Foreign affairs preemption applies where a state "take[s] a position on a matter of foreign policy with no serious claim to be addressing a traditional state responsibility." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420 n.11 (2003). Here, the State pleads generally applicable tort claims in an area of traditional state responsibility and takes no foreign policy "position." Defendants identify no specific

---

come from federal law does not make the tort claim one 'arising under' federal law" for removal purposes); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815, at *2–3 (E.D. Mo. 2017) (fraudulent concealment claims rested on defendant's alleged withholding of material information from the Department of Agriculture, and necessarily raised federal question because federal regulations "identif[ied] the duty to provide information and the materiality of that information"); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *1–2 (N.D. Cal. 2016) (denying motion to remand where state law claims concerning commercial flightpath necessarily challenged Federal Aviation Administration's approval of flightpath).

conflict between the State's claims and a specific federal policy, treaty, or executive action. The State's claims do not impinge on the federal government's foreign policy prerogative.

In any case, the State's action must "produce something more than incidental effect in conflict with express foreign policy of the National Government" to intrude on the foreign affairs power. *Garamendi*, 539 U.S. at 420; *Capron v. Office of Attorney Gen. of Massachusetts*, 944 F.3d 9 at *12 (1st Cir. 2019) (foreign policy underpinning federal au pair program did not preempt Massachusetts wage and hour laws that "merely implicate[d]" federal power). Defendants do not identify any impact the State's suit will have on foreign relations, and their failures to warn and campaigns of deception promote no legitimate American interest in diplomacy or the international community.[28]

### 2. The Complaint Raises No Questions of Federal Law That Are "Substantial" to the Federal System.

Defendants also have not met their burden of identifying any "substantial" federal question within *Grable*'s meaning. "[A]n issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or

[28] Defendants' citation to various presidential directives illustrating federal interest in climate change are irrelevant to removal jurisdiction; none express exclusive federal authority. To the contrary, multiple Presidents have reinforced the role the several states play in responding to the problem of climate change. *See* Plaintiff's Reply in Support of Motion to Remand, *Rhode Island v. Chevron, et al*, No. 18-cv-00395, Doc. 95 at 17 n.5 (D.R.I. Oct. 5, 2018) (collecting examples).

regulation which will govern a large number of cases." *Municipality of Mayagüez v. Corporación Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) (reversing denial of remand because alleged violation of federal regulations and mismanagement of federal funds did not present substantial federal question). "[A] federal issue may also be substantial where the resolution of the issue has broader significance for the Federal Government," in particular "where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by a federal department, agency, or service." *Id.*

Defendants argue substantial questions are presented because the State's case "sits at the intersection of federal energy and environmental regulatory policy, and implicates foreign policy and national security." AOB38. But, as discussed above, the State's claims do not turn on any question of federal law, let alone a "new interpretation of a federal statute or regulation which will govern a large number of cases." *See Mayagüez*, 726 F.3d at 14. While Defendants vaguely aver that the State's claims will "require a factfinder to substitute its own judgment for that of policymakers," AOB37, they do not identify any federal program, agency, or service that would be affected by a judgment in the State's favor. *See Mayagüez*, 726 F.3d at 15 (dispute over contract involving HUD funds not substantial where "there was never any risk … that the outcome of the dispute would impact HUD's ability to demand repayment of federal funds in any future case"); *see also Burrell*, 918 F.3d

at 386 ("[E]ven a strong interest in uniformity of results is not enough to make a federal question 'substantial'"). *Grable*'s "substantiality" element is not satisfied.

**3. The Balance of Judicial Responsibility Favors State Courts Hearing These State Law Claims.**

The "congressionally approved balance of federal and state judicial responsibilities" favors state court jurisdiction here. *Grable*, 545 U.S. at 314. The Fourth Circuit recently rejected removal jurisdiction in *Burrell v. Bayer Corp.*, reasoning: "Garden variety state tort actions involving federally regulated products ... very commonly incorporate allegations of federal regulatory violations, often by way of negligence per se claims," yet those actions are typically resolved in state court under state law. 918 F.3d at 387. "Exercising federal jurisdiction over all of *those* actions ... would risk enormous disruption to the division of judicial labor, with a 'tremendous number of cases' shunted from state to federal court." *Id.* (quoting *Grable*, 545 U.S. at 318). The same applies here: redressing deceptive marketing and promotion comes within traditional state police power, firmly within the authority of the state courts to resolve. *See, e.g.*, *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A. 3d 262, 276 (Conn. 2019) ("The regulation of advertising that threatens the public health, safety, and morals has long been considered a core exercise of the states' police powers.").

### C. The Clean Air Act Does Not Completely Preempt the State's Claims.

Defendants failed to meet the high bar required to show the CAA completely preempts the State's claims. JA.430 ("No court has [held that the CAA completely preempts state law], and neither will this one."). Complete preemption "depends on the existence of palpable evidence that Congress intended to displace completely a particular category of state-law causes of action, as manifested by [a] federal statute's language, overall structure, and legislative history." *Cambridge Literary Props.*, 510 F.3d at 99–100. "To remove an action on the basis of complete preemption, a defendant must establish that the plaintiff has a discernible federal [claim] and that Congress intended [the federal claim] to be the exclusive remedy for the alleged wrong." *Pinney*, 402 F.3d at 449 (quotations omitted).

The Supreme Court has thus been "reluctant to find th[e] extraordinary pre-emptive power" required for complete preemption, holding only three statutes (none at issue here) to have complete preemptive effect. *Metro. Life Ins. Co.*, 481 U.S. at 65. Unsurprisingly, Defendants cannot cite any case holding the CAA completely preempts any state law tort claims. To the contrary, cases uniformly reject the notion

that the CAA completely preempts anything.[29] Indeed, courts often reject even ordinary preemption defenses under the CAA.[30]

### 1. Congress Did Not Intend the CAA to Displace Plaintiff's State Law Claims.

At least three statutory provisions preclude Defendants' contention that Congress intended the CAA to completely preempt state-law claims.

*First*, Congress declared "that air pollution prevention ... and air pollution control at its sources is the primary responsibilities of States and local governments." 42 U.S.C. §7401(a)(3). That finding demonstrates Congress's understanding that such state measures are important and should continue.

*Second*, Congress stated that, with limited exceptions not relevant here, nothing in the Act "shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution," except those "less stringent than the standard or limitation" provided

---

[29] *See, e.g.*, *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342–43 (6th Cir. 1989) (denying removal based on complete preemption because "the plain language of the [CAA's] savings clause ... clearly indicates that Congress did not wish to abolish state control").

[30] *See, e.g.*, *See Bell v. Cheswick Generating Station*, 734 F.3d 188, 198 (3d Cir. 2013) (allowing state tort claims to proceed against coal-fired power plant, holding "[i]f Congress intended to eliminate such private causes of action, 'its failure even to hint at' this result would be 'spectacularly odd'"); *Merrick*, 805 F.3d at 690 (allowing state law claims for emissions from distillery because "the Clean Air Act expressly preserves the state common law standards on which plaintiffs sue").

for by the CAA. 42 U.S.C. §7416. The CAA sets a *floor* for emissions standards and limitations, and does not restrict states' ability to enforce *stricter* standards.[31]

*Third*, Congress specified that "nothing in" the chapter governing citizen suits "shall restrict any right which any person (or class of persons) may have under any statute or common law ... to seek any other relief." *Id.* §7604(e). Congress thus did not intend the Act to provide the exclusive means of enforcing air quality standards. *See Bell*, 734 F.3d at 197–98 ("states are free to impose higher standards on their own sources of pollution [than those in the CAA], and ... state tort law is a permissible way of doing so").

Finally, Defendants' reliance on 42 U.S.C. §7607, AOB48–49, is misplaced. That provision establishes the exclusive means of challenging actions of the EPA Administrator, which is irrelevant to this case.

**2. The CAA Provides No Substitute Cause of Action.**

The Act also cannot have complete preemptive force here because it does not provide a private cause of action that substitutes for state law claims. "The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, … coupled with a federal cause of action for wrongs of the same type." *Fayard v. Ne.*

[31] The State's requested relief does not seek to restrict any party's carbon emissions, but we highlight this savings clause to illustrate Congress's unambiguous intent not to completely preempt state law even in areas affected by the Act.

*Vehicle Servs., LLC*, 533 F.3d 42, 46 (1st Cir. 2008); *see also id.* at 45 (complete preemption requires showing that Congress "strongly intended an exclusive federal cause of action"). Unlike ordinary preemption (which merely extinguishes state law), complete preemption "transmogrifies a claim purportedly arising under state law into a claim arising under federal law," and therefore provides the district court with original jurisdiction. *Lawless, LLC*, 894 F.3d at 18. Thus: "For complete preemption, the critical question is whether federal law provides an exclusive substitute federal cause of action that a federal court … can employ for the kind of claim or wrong at issue." *Fayard*, 533 F.3d at 46.

The CAA's citizen-suit provision creates a right of action only for violations of emissions standards or EPA orders. *See* 42 U.S.C. §7604. It does not regulate defective products, marketing, or promotion at all, let alone create a right of action for related claims or provide a right to compensatory damages or authorize equitable abatement. *See, e.g.*, *Freeman v. Grain Processing Corp.*, 848 N.W.2d 58, 69 (Iowa 2014) (holding CAA did not preempt state tort action for emissions, emphasizing distinction between tort law and CAA). Without any federal cause of action to remedy the State's injuries, "a danger exists of creating gaps in protection by categorically supplanting state claims with non-existent federal remedies," *Fayard*, 533 F.3d at 49, and complete preemption cannot apply.

### D. Plaintiff's Claims Are Not Removable Under the Outer Continental Shelf Lands Act.

The OCSLA provides no basis for jurisdiction here because, even under a maximally broad reading of the statute's jurisdictional grant, Defendants have not shown removal was proper. "Defendants' operations on the Outer Continental Shelf ["OCS"] may have contributed to the State's injuries; however, Defendants have not shown that these injuries would not have occurred but for those operations." JA.434.

OCSLA jurisdiction covers disputes where physical activities on the OCS caused the alleged injuries, or where the dispute actually and directly involves OCS drilling and exploration activities, such as contract disputes involving OCS contractors. Here, the method and location of Defendants' production of fossil fuels is immaterial to the State's claims, and Defendants' approach would "open the floodgates to cases that could invoke OCSLA jurisdiction far beyond its intended purpose." *Plaquemines Par. v. Palm Energy Offshore, LLC*, 2015 WL 3404032, at *5 (E.D. La. 2015). Defendants' overbroad formulation of OCSLA jurisdiction would bring into federal court any case involving conduct even remotely traceable to deep sea oil drilling. That absurd result must be rejected.

This Court has not determined the outer limits of OCSLA jurisdiction. Defendants rely on Fifth Circuit cases. But Defendants' arguments fail even under a maximally broad reading of those decisions. In *In re Deepwater Horizon* the Fifth Circuit held:

> Courts typically assess jurisdiction under [§1349] in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation.

745 F.3d 157, 163 (5th Cir. 2014). "[T]he term 'operation' contemplate[s] the doing of some physical act on the [OCS]." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994). A case "arises out of, or in connection with" the operation when (1) the plaintiff "would not have been injured 'but for'" the operation, *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988), and (2) granting relief "thus threatens to impair the total recovery of the federally-owned minerals" from the OCS. *EP Operating Ltd. P'ship*, 26 F.3d at 570. Fifth Circuit courts have treated OCSLA jurisdiction as broad, but have held that "the 'but-for' test ... is not limitless" and must be applied in light of the statute's overall goals to avoid "absurd results." *Plains Gas Sols., LLC v. Tennessee Gas Pipeline Co.*, 46 F. Supp. 3d 701, 704–05 (S.D. Tex. 2014).

Plaintiff's injuries here were not caused by, do not arise from, and do not interfere with physical "operations" on the OCS. Rather, the injuries stem from Defendants' prevarications about the known dangers of their products. Defendants' cases finding OCSLA jurisdiction, AOB43–46, each involve injuries caused by physical activity actually occurring on the OCS related to fossil fuel extraction, or were contract disputes concerning those activities. *See, e.g.*, *Deepwater Horizon*,

745 F.3d at 162–64. Plaintiff's injuries here depend on neither where nor by what "operations" Defendants extracted the products' constituent elements.[32]

### E. No Federal Enclave Jurisdiction Exists.

The district court correctly held that while federal enclave land "exists in Rhode Island ... the State's claims did not arise there, especially since its complaint avoids seeking relief for damages to any federal lands." JA.434.

"Federal question jurisdiction exists over tort claims that arise on federal enclave lands." *See, e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). Here, the Complaint expressly disclaims injuries on any federal property in Rhode Island. JA.23, n.2. Even if some portion of Defendants' *tortious conduct* occurred on federal land, a tort cause of action "arises," for enclave purposes, only when and where the underlying tort is complete. *See, e.g.*, *Totah v. Bies*, 2011 WL 1324471, at *1 (N.D. Cal. 2011) (finding enclave jurisdiction in defamation action because "the last event necessary to render the tortfeasor liable"

[32] *Parker Drilling Management Services, Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019), is inapposite. The plaintiff there worked on drilling platforms off the California coast, and filed California wage-and-hour claims based on work physically performed on the platforms. The defendant removed, and there is no indication the plaintiff contested removal; the parties agreed, moreover, that the plaintiff's claims were governed by OCSLA. *Id.* Federal jurisdiction is exclusive over the OCS, and the laws of adjacent states are incorporated as the governing federal law under OCSLA "[t]o the extent that they are applicable and not inconsistent with" any other federal provision. 43 U.S.C. §1333(a)(2)(A). The issue before the Court in *Parker* was whether California wage-and-hour law applied on adjacent regions of the OCS. No jurisdictional question was presented or resolved.

occurred in federal enclave). The State's claims "arose" only where the tort became complete, which occurred where the State was injured, namely on non-federal land within Rhode Island.

Defendants' argument that jurisdiction exists whenever "pertinent events" occurred within the federal enclave, AOB46–47, misstates the law. Even the out-of-circuit district court authority they cite applied federal enclave jurisdiction where "the majority" of the pertinent events took place on a federal enclave. *Jamil v. Workforce Res., LLC*, 2018 WL 2298119, at *4 (S.D. Cal. 2018). Even if the Court applied Defendants' "pertinent events" standard, enclave jurisdiction would be absent because the pertinent events—Defendants' deceptive marketing and promotion and the State's injuries—occurred outside federal enclaves.[33]

### F. Plaintiff's Claims Are Not Removable Under the Bankruptcy Removal Statute.

The State's claims are not removable under the Bankruptcy Removal Statute because (1) as the district court held, §1452 exempts these claims from removal because they are an exercise of the State's police or regulatory powers, JA.434–35;

[33] Contrary to Defendants' contentions, *Rosseter v. Indus. Light & Magic*, 2009 WL 210452 (N.D. Cal. 2009), does not hold that a defendant's operations outside a federal enclave are irrelevant to enclave jurisdiction. *See* AOB47. *Rosseter* held that the defendants' operations outside of a federal enclave were "not pertinent in establishing *the location of the events that constitute[d] the discrimination*" giving rise to the case. *Id.* at *2 (emphasis added).

and (2) Defendants failed to demonstrate a "close nexus" between this action and any bankruptcy proceeding.

**1. This Police Power Action Is Exempt from Removal.**

Plaintiff's claims are exempt from removal under §1452(a) because "this is an action designed primarily to protect the public safety and welfare." JA.435.

The First Circuit applies two interrelated inquiries—the public purpose and pecuniary purpose tests—to decide whether an action is an exercise of governmental police or regulatory authority. *See In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004). The court must "[a]sses[s] the totality of the circumstances, [and] determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare, *or* represents a governmental attempt to recover from property of the debtor estate." *In re McMullen*, 386 F.3d at 325.

Here, the State does not seek to protect any interest in any bankruptcy debtor's property, but instead to remediate public harm and protect the public. *See, e.g.*, JA.23 ¶1; JA.26 ¶8; JA.27 ¶12; JA.135–36 ¶¶217–23. Courts of appeals have held in analogous contexts that the exception applies where a state's claims "relat[e] primarily to matters of public health and welfare, and the money damages sought will not inure, strictly speaking, to the economic benefit of the stat[e]." *In re MTBE Prods. Liab. Litig.*, 488 F.3d at 133. Punitive damages do not enrich the State, but "deter[] harmful conduct," and thus complement the exercise of police power. *Exxon*

*Shipping Co. v. Baker*, 554 U.S. 471, 492 & n.9 (2008). The State's objectives here vindicate the public interest.

### 2. The Claims Are Not Related to Bankruptcy Proceedings.

Removal was not appropriate under §§1452(a) and 1334 because the State's claims are not "relate[d] to" any bankruptcy case. Section 1452(a) only allows removal of claims arising "under section 1334." Section 1334(b) vests district courts with original jurisdiction over civil proceedings "related to cases under title 11." Defendants allege jurisdiction based on two decades-old confirmed bankruptcy plans. *See* JA.206–07 ¶75.

Defendants mistakenly ask this Court to use a liberal standard that applies only *before* confirmation of a debtor's Chapter 11 plan. *See* AOB52 (citing *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (pre-confirmation "related to" jurisdiction encompasses matters that "could conceivably have any effect on the estate being administered in bankruptcy")). *After* confirmation, "related to" jurisdiction "narrows dramatically" and requires that claims have a "particularly close nexus" to the plan. *In re Boston Regional Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005). No "close nexus" exists where, as here, the matter at issue "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010). Defendants identify no bankruptcy law question

that would "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan," *Valley Hist. Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836–37 (4th Cir. 2007) (citation omitted).

Finally, Defendants vaguely argue "Plaintiff's theories of liability are based on the actions of Defendants' predecessors, subsidiaries, and affiliates," and "thus affect additional bankruptcy matters." AOB52–53. A speculative connection to unidentified bankruptcy matters cannot bring this case within "related to" jurisdiction.

**G. There Is No Admiralty Jurisdiction.**

Even if Plaintiff's claims arose in admiralty, which they do not, state law claims brought in state court "cannot be removed based solely on federal admiralty jurisdiction," as the district court held. JA.435. Federal courts have exclusive jurisdiction over "maritime proceedings in rem"; for *in personam* cases like this one, the "saving to suitors" clause in §1333 "leave[s] state courts competent to adjudicate maritime causes of action" and has long been interpreted to prohibit removal solely on the basis of admiralty jurisdiction. *Madruga v. Superior Court of State of Cal.*, 346 U.S. 556, 560–61 (1954) (quotations omitted); *see also Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 371 (1959).

Nothing in the 2011 Venue Clarification Act disrupted this rule, which has persisted "throughout the history of federal admiralty jurisdiction—from the

Judiciary Act of 1789 … to the present." *Coronel v. A.K. Victory*, 1 F. Supp. 3d 1175, 1187–88 (W.D. Wash. 2014) (resiliency admiralty removal). The State exercised its right to file its claims in state court, and §1333 prohibits removal on the basis of admiralty alone.

Regardless, the State's claims do not arise in admiralty. A tort claim comes within admiralty jurisdiction only when it satisfies both the "location" and "connection to maritime activity" tests. *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Defendants satisfy neither. Where, as here, the injury suffered is on land, the location test requires a showing that the alleged tort was caused by a vessel on navigable water. *Grubart*, 513 U.S. at 534. Even if Defendants could establish that fossil fuel production or extraction occurs on vessels, AOB54, that would not satisfy the location test here because there is no allegation that those "vessels" *caused* the State's injuries on land. *See Pryor v. Am. President Lines,* 520 F.2d 974, 979 (4th Cir. 1975) (Maritime law does not extend to "land-based torts where a ship is not at fault, but supplies only a fortuitous but-for connection with an injury."). The State alleges the dangerous nature of the products and Defendants' wrongful and misleading promotion proximately caused the State's injuries, not a vessel. *See, e.g.*, JA.26 at ¶10; JA.70–71 at ¶¶97, 98; JA.71 at ¶103; JA.72 at ¶105; JA.119–20at ¶¶197, 199; JA.138–39 at ¶229.

Independently, Defendants fail the maritime connection test, which requires the allegedly tortious activity to have "a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 533–34 (quotations omitted). The relevant inquiry is whether the tort arose from a traditional subject of admiralty law, *e.g.*, navigation. Defendants' deceptive marketing and over-promotion of fossil fuels has nothing to do with navigable waters or "the special expertise of a court in admiralty as to navigation or water-based commerce." *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1122 (9th Cir. 1984). Moreover, oil and gas production from floating platforms is not a "traditional maritime activity." In *Herb's Welding, Inc. v. Gray*, the Supreme Court concluded that "exploration and development of the Continental Shelf are not themselves maritime commerce" and activities on "drilling platforms [are] not even suggestive of traditional maritime affairs." 470 U.S. 414, 422, 425 (1985).

Defendants' assertion that "production of oil and gas from a vessel ... is considered maritime activity," AOB.54, misstates the law. In *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215–216 (5th Cir. 2013), the court acknowledged certain floating oil and gas platforms "are considered *vessels* under maritime law," but conceded that "the Supreme Court in *Herb's Welding* rejected the Fifth Circuit's [prior] view that 'offshore drilling is maritime commerce.'" *Id.* at 216. *Barker*

expressly abrogated the contrary holding in *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986).[34]

**CONCLUSION**

The Court should affirm.

Dated: December 26, 2019

*/s/ Victor M. Sher*

Victor M. Sher
vic@sheredling.com
Matthew K. Edling
matt@sheredling.com
**Sher Edling LLP**
100 Montgomery Street, Suite 1410
San Francisco, CA 94014
(628) 231-2500

Neil F.X. Kelly (No. 53595)
Assistant Attorney General
Deputy Chief of the Civil Division
**OFFICE OF THE ATTORNEY GENERAL**
150 South Main Street
Providence, RI 02903
(401) 274-4400
nkelly@riag.ri.gov

*Attorneys for Plaintiff-Appellee*
*State of Rhode Island*

---

[34] *In re Crescent Energy Servs.*, 896 F.3d 350, 356 (5th Cir. 2018), cited at AOB 54, speaks to the non-jurisdictional question of "whether a contract applicable to offshore oil and gas exploration should be categorized as maritime," which is answered under a wholly different test than that for determining whether a *tort* claim is removable under federal admiralty jurisdiction. *Crescent Energy* does not cite either *Barker* and *Herb's Welding*—because it was neither resolving a jurisdictional question nor considering a tort claim.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,997 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

Dated: December 26, 2019

/s/ *Victor M. Sher*
Victor M. Sher

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Victor M. Sher*
Victor M. Sher

## STATUTORY ADDENDUM

Pursuant to Federal Rule of Appellate Procedure 28(f), this addendum includes pertinent statutes, reproduced verbatim:

**Statute** **Page**

28 U.S.C. § 1292(b) ....................55
28 U.S.C. § 1333 ....................55
28 U.S.C. § 1442 ....................55
28 U.S.C. § 1443 ....................57
28 U.S.C. § 1447(d) ....................57
28 U.S.C. § 1452 ....................57
42 U.S.C. § 7401 ....................58
42 U.S.C. § 7416 ....................59
42 U.S.C. § 7604 ....................59
42 U.S.C. § 7607 ....................60
43 U.S.C. §1333(a)(2)(A) ....................61
43 U.S.C. § 1349(b) ....................61

**28 U.S.C. § 1292(b). Interlocutory decisions**

**(b)** When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

**28 U.S.C. § 1333. Admiralty, maritime and prize cases**

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

**28 U.S.C. § 1442. Federal officers or agencies sued or prosecuted**

**(a)** A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
**(2)** A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.
**(3)** Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

**(4)** Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

**(b)** A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

**(c)** Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

**(1)** protected an individual in the presence of the officer from a crime of violence;
**(2)** provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or
**(3)** prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

**(d)** In this section, the following definitions apply:

**(1)** The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.
**(2)** The term "crime of violence" has the meaning given that term in section 16 of title 18.
**(3)** The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.
**(4)** The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

**(5)** The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).
**(6)** The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

**28 U.S.C. § 1443. Civil rights cases**

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

**(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
**(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

**28 U.S.C. § 1447(d). Procedure after removal generally**

…

**(d)** An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.
…

**28 U.S.C. § 1452. Removal of claims related to bankruptcy cases**

**(a)** A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

…

**42 U.S.C. § 7401. Congressional findings and declaration of purpose**

**(a) Findings** The Congress finds —

**(1)** that the predominant part of the Nation's population is located in its rapidly expanding metropolitan and other urban areas, which generally cross the boundary lines of local jurisdictions and often extend into two or more States;
**(2)** that the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation;
**(3)** that air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments; and
**(4)** that Federal financial assistance and leadership is essential for the development of cooperative Federal, State, regional, and local programs to prevent and control air pollution.

**(b) Declaration** The purposes of this subchapter are—

**(1)** to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population;
**(2)** to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution;
**(3)** to provide technical and financial assistance to State and local governments in connection with the development and execution of their air pollution prevention and control programs; and
**(4)** to encourage and assist the development and operation of regional air pollution prevention and control programs.

**(c) Pollution prevention**
A primary goal of this chapter is to encourage or otherwise promote reasonable Federal, State, and local governmental actions, consistent with the provisions of this chapter, for pollution prevention.

**42 U.S.C. § 7416. Retention of State authority**

Except as otherwise provided in sections 1857c-10(c), (e), and (f) (as in effect before August 7, 1977), 7543, 7545(c)(4), and 7573 of this title (preempting certain State regulation of moving sources) nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 7411 or section 7412 of this title, such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section.

**42 U.S.C. § 7604. Citizen suits**

…

**(e) Nonrestriction of other rights**

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—

> **(1)** bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or
> **(2)** bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality, against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

**42 U.S.C. § 7607 Administrative proceedings and judicial review**

…

**(b) Judicial review**

**(1)** A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411of this title,,[3] any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1)of this title), any determination under section 7521(b)(5)[1] of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise. The filing of a petition for reconsideration by the Administrator of any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review nor extend the time within

which a petition for judicial review of such rule or action under this section may be filed, and shall not postpone the effectiveness of such rule or action.

…

**43 U.S.C. §1333(a)(2)(A). Laws and regulations governing lands**

. . .

(A)To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf.

**43 U.S.C. § 1349. Citizens suits, jurisdiction and judicial review**

…

**(b) Jurisdiction and venue of actions**

**(1)** Except as provided in subsection (c) of this section, the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter. Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

**(2)** Any resident of the United States who is injured in any manner through the failure of any operator to comply with any rule, regulation, order, or permit issued pursuant to this subchapter may bring an action for damages (including reasonable attorney and expert witness fees) only in the judicial district having jurisdiction under paragraph (1) of this subsection.

…