**No. 19-1818**

IN THE

# United States Court of Appeals
FOR THE FIRST CIRCUIT

STATE OF RHODE ISLAND,

*Plaintiff-Appellee*,

v.

SHELL OIL PRODUCTS COMPANY, LLC, *et. al*,

*Defendants-Appellants*.

Appeal from the U.S. District Court for the District of Rhode Island,
No. 1:18-cv-00395-WES-LDA (The Honorable William E. Smith)

**BRIEF OF THE NATIONAL LEAGUE OF CITIES; THE U.S. CONFERENCE OF MAYORS; AND THE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Robert S Peck
CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
455 Massachusetts Avenue, N.W.
Suite 152
Washington, DC 20001
Phone: (202) 944-2874
Fax: (646) 365-3382
robert.peck@cclfirm.com
*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the National League of Cities, the U.S. Conference of Mayors and the International Municipal Lawyers Association ("Local Government *Amici*"), by and through their undersigned attorney, hereby certify that they each have no parent corporation and that no publicly held corporation owns 10% or more of any of their stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iii

STATEMENT OF IDENTIFICATION .......... 1

BACKGROUND .......... 5

ARGUMENT .......... 10

I. FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED. .......... 10

II. THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION. .......... 17

III. THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE BY STATUTE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS. .......... 21

CONCLUSION .......... 25

CERTIFICATE OF SERVICE .......... 26

CERTIFICATE OF COMPLIANCE .......... 27

# TABLE OF AUTHORITIES

## Cases

*Alabama v. Conley*, 245 F.3d 1292 (11th Cir. 2001) ... 16

*Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283 (4th Cir. 2001) ... 23

*Am. Elec. Power, Co. v. Connecticut*, 564 U.S. 410 (2011) ... 21, 22

*Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d 903 (9th Cir. 2018) ... 18, 20

*Appalachian Volunteers, Inc. v. Clark*, 432 F.2d 530 (6th Cir. 1970) ... 14

*Avery v. Sec'y of Health & Human Servs.,* 762 F.2d 158 (1st Cir. 1985) ... 15

*City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126 (Ill. App. Ct. 2005) ... 7

*City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) ... 6

*City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003) ... 6

*City of Greenwood v. Peacock*, 384 U.S. 808 (1966) ... 13

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ... 22

*City of Milwaukee v. NL Indus.*, 762 N.W.2d 757 (Wis. Ct. App. 2008) ... 7

*City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), *appeal pending*, No. 18-2188 (2d Cir.) ... 8

*City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018), *appeal pending*, No. 18-16663 (9th Cir.) ... 8

*City of Portland v. Monsanto Co.*, 2017 WL 4236583 (D. Or. Sept. 22, 2017) ... 7

*City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110 (Mo. 2007) ... 7

*City of Walker v. Louisiana*, 877 F.3d 563 (5th Cir. 2017) ... 12, 15, 16

*Cleveland v. Ameriquest*, 621 F. Supp. 2d 513 (N.D. Ohio 2009) ..........................7

*Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554 (S.D.N.Y. 2017), *aff'd* 906 F.3d 41 (2d Cir. 2018).......................................................................21

*Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735 (1st Cir. 1977) ..........................15

*Columbia Pac. Bldg. Trades Council v. City of Portland*, 412 P.3d 258 (Or. Ct. App. 2018) ...........................................................................................21

*Comer v. Murphy Oil USA*, 585 F.3d 855 (5th Cir. 2009), *petition for writ of mandamus denied sub nom. In re Comer*, 562 U.S. 1133 (2011) .......................24

*Comer v. Murphy Oil USA*, 607 F.3d 1049 (5th Cir. 2010) ..................................24

*County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *appeal pending*, Nos. 18-15499, 18-15502, 18-15503, 18-16376 (9th Cir.) ...8, 24

*Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1 (1st Cir. 1999) .....................12

*Davis v. Glanton*, 107 F.3d 1044 (3d Cir. 1997) ..................................................16

*Electric Power Supply Ass'n v. Star*, 904 F.3d 518 (7th Cir. 2018).......................20

*Energy and Env't Legal Inst. v. Epel*, 43 F. Supp. 3d 1171 (D. Colo. 2014)..........21

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Calif.*, 463 U.S. 1 (1983) ........................................................................................... 18, 24

*Healy v. Ratta*, 292 U.S. 263 (1934).....................................................................12

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. Sup. Ct. 2007) .....................................7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ...........................................................................................7

*In re: National Prescription Opiate Litigation*, 1:17-MD-2804 (N.D. Ohio Dec. 8, 2017).........................................................................................................7

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987)...................................................22

*Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) ............................ 14, 15

*Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695 (6th Cir. 2015)........................22

*Lorillard v. Pons*, 434 U.S. 575 (1978) ..................................................................17

*Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015) ......................................14

*Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *as amended* (June 20, 2019), *appeal pending*, No. 19-1644 (4th Cir.) ......8

*McQueary v. Jefferson Cty.*, 819 F.2d 1142 (6th Cir. 1987) ..................................16

*Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685 (6th Cir. 2015).......................22

*Mesa v. California*, 489 U.S. 121 (1989)................................................................11

*Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148 (4th Cir. 1994) ......12

*N.Y. Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 85 N.E.2d 873 (1949) ..........................................................................................................5

*Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd* 696 F.3d 849 (9th Cir. 2012) ..........................................................23

*Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012) .. 22, 23

*Noel v. McCain*, 538 F.2d 633 (4th Cir. 1976) ............................................... 11, 16

*Patel v. Del Taco Inc.*, 446 F.3d 996 (9th Cir. 2006) ...................................... 12, 16

*People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *rev. denied* (Feb. 14, 2018), *cert. denied sub nom. ConAgra Grocery Prod. Co. v. California*, 139 S.Ct. 377 (2018), and *cert. denied sub nom. Sherwin-Williams Co. v. California*, 139 S.Ct. 378 (2018) ........7

*Robertson v. Ball*, 534 F.2d 63 (5th Cir. 1976) ......................................................14

*Rocky Mtn. Farmers v. Corey*, 913 F.3d 940 (9th Cir. 2019).................................20

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)...................................12

*State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428 (R.I. 2008) .....................................7

*State v. Purdue Pharma LP*, No. CJ-2017-816 (Okl. Dist. Aug. 26, 2019) .............7

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981)..........................17

*Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405 (11th Cir. 1999) .............12

*White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816 (N.D. Ohio 2000)..................6

*Willingham v. Morgan*, 395 U.S. 402 (1969) .......................................................11

**Statutes**

28 U.S.C. § 1292 .....................................................................................................14

28 U.S.C. § 1442 .....................................................................................................10

28 U.S.C. § 1443 ............................................................................................ 10, 11

28 U.S.C. § 1447 ........................................................................................... *passim*

28 U.S.C. § 1453 .....................................................................................................14

Climate Change Planning and Resiliency Act, Conn. Pub. Act 18-82...................19

Climate Protection and Green Economy Act, Mass. Gen. Laws Ann. ch. 21N ......19

Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 ................11

**Other Authorities**

2 M. Keely et al., *Ch. 11: Built Environment, Urban System, and Cities* in Impacts, Risks, and Adaptation in the United States: The Fourth National Climate Assessment (D.R. Reidmiller et al. eds., 2018)...................................................2

Center for Climate and Energy Solutions, State Climate Policy Maps, https://www.c2es.org/content/state-climate-policy/ ..........................................19

H.R. REP. 112-17 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420...................... 11, 13

Nat'l Ass'n of Attorneys Gen., Master Settlement Agreement, exh. N, at http://www.naag.org/assets/redesign/files/msa-tobacco/MSA.pdf .......................6

Sarah L. Swan, *Plaintiff Cities*, 71 Vand. L. Rev. 1227 (2017) ...............................6

William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997 (1966) ....................5

**Treatises**

15A Wright et al., Fed. Prac. & Proc. Juris. § 3914.11 (2d ed.)....................14

**Regulations**

Clean Power Plan, 80 Fed. Reg. 64,662 (Oct. 23, 2015)....................19

## STATEMENT OF IDENTIFICATION[1]

Local Government *Amici* comprise three of the nation's leading local government associations. The National League of Cities (NLC) is the oldest and largest organization representing municipal governments throughout the United States. Its mission is to strengthen and promote cities as centers of opportunity, leadership, and governance. Working in partnership with forty-nine State municipal leagues, NLC serves as a national advocate for more than 19,000 cities and towns, representing more than 218 million Americans. Its Sustainable Cities Institute serves as a resource hub for climate change mitigation and adaptation for cities.

The U.S. Conference of Mayors (USCM) is the official non-partisan organization of U.S. cities with a population of more than 30,000 people (approximately 1,400 cities in total). USCM is home to the Mayors Climate Protection Center, formed to assist with implementation of the Mayors Climate Protection Agreement.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* state that no party's counsel authored this brief, and no party, party's counsel, or person other than *amici* or its members or counsel contributed financial support intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

The International Municipal Lawyers Association (IMLA) is a nonprofit, nonpartisan professional organization consisting of more than 2,500 members. The membership is composed of local government entities, including cities and counties, and subdivisions thereof, as represented by their chief legal officers, state municipal leagues, and individual attorneys. IMLA serves as an international clearinghouse of legal information and cooperation on municipal legal matters. Established in 1935, IMLA is the oldest and largest association of attorneys representing United States municipalities, counties, and special districts.

Over eighty percent of Americans now live in urban areas, and even more of them work there; as a consequence, Local Government *Amici*'s members are responsible for understanding the risks to and planning for the wellbeing of the great majority of Americans. The concentration of people, activity, and infrastructure in cities makes them uniquely valuable economically. It also serves to compound the adverse impacts of a host of climatic changes, including sea-level rise; increasingly frequent and severe storms that pose immediate threats to human life and critical infrastructure; damaged and disappearing coastlines; degraded ecosystems and reduced ecosystem services function; increases in heat-related deaths; poor air quality and exacerbated health problems; longer droughts that combine with increased temperatures and water evaporation rates to strain water supplies; and heightened wildfire risk. *See* 2 M. Keely et al., *Ch. 11: Built Environment, Urban*

*System, and Cities* in Impacts, Risks, and Adaptation in the United States: The Fourth National Climate Assessment 444–47 (D.R. Reidmiller et al. eds., 2018).

Local Government *Amici*'s interests in this case are twofold. First, as representatives of local governments nationwide, *Amici* are particularly sensitive to the needs for a balanced federal-state judicial system. This case, which seeks a determination of local government parties' rights under state law, raises a critical federalism issue: the appropriate scope of appellate review of a district court's remand order under 28 U.S.C. § 1447(d). Allowing any defendant to obtain plenary review of all aspects of a remand order just by including an argument for federal officer removal would fundamentally disrupt local governments' ability to litigate claims brought under state law in state courts and incentivize inclusion of meritless federal-officer removal claims and increased attempts to appeal remand orders due to that inclusion.

Second, should the Court extend its review beyond this limitation, Local Government *Amici* have a unique interest in the Court's proper recognition of state-court jurisdiction over state law claims for injuries arising from climate change consequences. The district court properly found that it lacked subject-matter jurisdiction over Plaintiff's state law claims. Judicial conversion of a variety of well-pleaded state law claims into vaguely defined federal common law claims, and the exercise of federal jurisdiction over them that Defendants seek, would threaten to

fundamentally intrude upon municipal governments' authority within our federalist system to rely on state law and state courts to seek redress for localized harms. In a contemporary world defined by complex economic and environmental systems that transcend multiple borders, even conduct arising in part outside a municipality nonetheless can cause highly damaging local impacts.

The district court's decision in this case is fully consistent with essential federalism principles and recognizes the right of local governments to bring state-law claims for climate change harms in state courts. Local Government *Amici* respectfully urge this Court to limit the scope of its review to the sole issue properly before it, concerning Defendants' meritless claim of federal-officer jurisdiction. Should the Court review other aspects of the district court's remand order it should affirm the decision to remand for lack of subject-matter jurisdiction and sustain the viability of Plaintiff's state law claims.

Local Government *Amici* file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and Circuit Rule 29(b). All parties to the appeal have consented to the filing of this brief.

## BACKGROUND

State law public nuisance, product liability, trespass, negligence, and other tort claims provide an important means for cities and local governments to seek abatement of and damages for localized harms arising from activities that cross jurisdictional boundaries, as well as justice for their residents suffering those harms, including their most vulnerable populations. Local governments have, for instance, long employed state public nuisance law to address conduct offensive to the community, from environmental pollution to red-light districts, as an exercise of their inherent and reserved police power. *See* William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L. Rev. 997 (1966) (tracing the history of public nuisance). As the New York Court of Appeals noted some 80 years ago, in a statement emblematic of conditions nationwide:

> [W]here the public health is involved, the right of the town to bring such an action to restrain a public nuisance may be tantamount to its right of survival… [I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit. The right to exist necessarily implies the right to take such steps as are essential to protect existence.

*N.Y. Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 84, 85 N.E.2d 873, 877-78 (1949). In this long history, courts have always played a crucial role, balancing competing interests to determine where there has been an "unreasonable interference" with a public right. State and federal legislation addressing particular

social problems has undoubtedly reduced the domain of public nuisance, but it has not eliminated it. The same narrowing of cognizable claims can be said of other tort, product liability, and trespass actions. Indeed, these causes of action continue to play a vital role for cities, allowing cities to play a *parens patriae*-like role on behalf of their residents and offering an opportunity to hold private actors accountable for harms that result from their products and activities.

Cities' modern use of state-law claims, in both state and federal courts, to address cross-jurisdictional issues began more than three decades ago, when cities joined state attorneys general litigating asbestos and tobacco claims.[2] *See* Sarah L. Swan, *Plaintiff Cities*, 71 Vand. L. Rev. 1227, 1233 (2017). In the mid-1990s, cities again sought to protect their residents by suing the gun industry, invoking state public nuisance, among other claims. *See, e.g.*, *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1227 (Ind. 2003) (upholding claims for public nuisance, negligent sale, negligent design, and misleading and deceptive advertising); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (upholding claims for public nuisance, negligence, negligent design, and failure to warn); *White*

[2] New York City, San Francisco, and Los Angeles, along with Cook County, Illinois, and Erie County, New York, all joined the 1998 Master Settlement Agreement. *See* Nat'l Ass'n of Attorneys Gen., Master Settlement Agreement, exh. N, at http://www.naag.org/assets/redesign/files/msa-tobacco/MSA.pdf (last visited Dec. 21, 2019).

*v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 829 (N.D. Ohio 2000) (allowing public nuisance and negligent design claims).

A further decade later, cities pursued state public nuisance, tort, and product liability claims to abate the harms caused by the gasoline additive MTBE and by lead paint. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013); *People v. ConAgra Grocery Prod. Co.*, 227 Cal. Rptr. 3d 499, 598 (Ct. App. 2017), *reh'g denied* (Dec. 6, 2017), *rev. denied* (Feb. 14, 2018), *cert. denied sub nom. ConAgra Grocery Prod. Co. v. California*, 139 S.Ct. 377 (2018), and *cert. denied sub nom. Sherwin-Williams Co. v. California*, 139 S.Ct. 378 (2018); *City of Milwaukee v. NL Indus.*, 762 N.W.2d 757, 770 (Wis. Ct. App. 2008); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 458 (R.I. 2008); *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. Sup. Ct. 2007); *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007); *City of Chicago v. Am. Cyanamid Co.*, 823 N.E.2d 126, 140 (Ill. App. Ct. 2005).

In recent years, cities have brought similar cases against financial institutions for the consequences of the subprime mortgage crisis, against pharmaceutical companies to help carry the costs needed to address the opioid epidemic, and against Monsanto to compensate for harms from Polychlorinated Biphenyl (PCB) contamination. *See, e.g.*, *Cleveland v. Ameriquest*, 621 F. Supp. 2d 513, 536 (N.D. Ohio 2009); *In re: National Prescription Opiate Litigation*, 1:17-MD-2804 (N.D.

Ohio Dec. 8, 2017); *City of Portland v. Monsanto Co.*, 2017 WL 4236583 (D. Or. Sept. 22, 2017). *See also State v. Purdue Pharma LP*, No. CJ-2017-816 (Okl. Dist. Aug. 26, 2019) (finding pharmaceutical company liable for public nuisance where false and misleading statements caused opioid epidemic).

All these cases involved claims under state law, and *none* saw a state-law claim judicially converted into a federal common law claim, much less converted into a federal claim for subject-matter jurisdiction purposes, only to then find the federal claim displaced by a federal statute. In this respect, the district court's decision stands in line with a consistent body of jurisprudence that has sustained the availability of state claims for complex cases like this one. *See, e.g.*, *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *as amended* (June 20, 2019), *appeal pending*, No. 19-1644 (4th Cir.) (public nuisance claim was not governed by federal common law); *County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) (ordering remand of government lawsuit against fossil fuel companies), *appeal pending*, Nos. 18-15499, 18-15502, 18-15503, 18-16376 (9th Cir.).

To be sure, two courts have adopted the basic reasoning of Defendants' arguments. *See City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1028 (N.D. Cal. 2018), *appeal pending*, No. 18-16663 (9th Cir.), and *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 1028 (S.D.N.Y. 2018), *appeal pending*, No. 18-2188 (2d Cir.).

Yet, as described more fully below, these two courts joined what is a distinctly minority view.

The district court's decision should be affirmed. As Plaintiff argues in its brief, and as discussed further below, the Court should cabin its review of the district court's decision and address only the narrow question of whether removal is warranted due to federal-officer jurisdiction. As Plaintiff further argues, remand was appropriate because Plaintiff's claims do not arise under federal law, are not completely preempted by the Clean Air Act, do not raise disputed and substantial federal issues, and do not fit into the other narrow categories Defendants proffer that might otherwise support removal.

This is, in short, a case against manufacturers, marketers, and sellers, that sounds in nuisance, negligence, and strict liability for design defect and failure to warn under state law and, in light of those defendants' conduct, seeks to recover costs expended by a local government to address foreseeable harms suffered as a result of the intended use of their products, along with other relief. There are no "uniquely federal interests" at stake in this case. This is not a case about regulating greenhouse gas emissions anywhere, controlling federal fossil fuel leasing programs on public lands, or dictating foreign governments' climate policies or energy regimes. This case raises textbook claims under state law, seeking to allocate fairly a portion of the significant costs required to protect city and county residents from

harms inflicted by Defendants' products and representations. Ultimately, uniform adjudication of the financial burdens local governments bear for climate change adaptation measures might or might not be desirable public policy, but it is neither necessary nor mandated by any federal law. The district court accurately perceived the extraordinary implications of defendants' arguments to the contrary. Its decision should be upheld.

## ARGUMENT

### I. FEDERALISM PRINCIPLES REQUIRE APPELLATE REVIEW OF THE DISTRICT COURT'S REMAND ORDER BE LIMITED TO THE ISSUE CONGRESS EXPRESSLY EXCEPTED.

The district court properly remanded this case to state court since no basis for removal to federal court applies, including federal-officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). This Court should limit its review of the remand order to the question of whether removal was required due to federal-officer jurisdiction. This limitation preserves the balance of federalism Congress sought to protect when it authorized appellate review of federal-officer removal under 28 U.S.C. § 1442, as both the text and legislative history demonstrate. It is also consistent with the vast majority of sister circuit holdings.

Appellate review of remand orders is generally barred with two limited exceptions. 28 U.S.C. § 1447(d). An appellate court has jurisdiction to review whether a case was properly removed under 28 U.S.C. § 1443 (civil rights removal

provision) or 28 U.S.C. § 1442(a)(1) (federal officer removal provision). The second basis, federal-officer removal, was added in 2011, although removal on these grounds has a long pedigree.[3] Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545. The Removal Clarification Act of 2011 simply added the words "1442 or" into Section 1447(d) so that Section 1447(d) now reads:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

Congress intended for this new addition to be identical to the civil rights exception. H.R. REP. 112-17, at 7 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420, 425 ("Section 2(d) amends Section 1447 by permitting judicial review of Section 1442 cases that are remanded, *just as they are* with civil rights cases.") (emphasis added).

That the provisions are to be treated the same is important. Although this Court has not had occasion to address it, sister circuits have long held that review is limited to whether removal was proper under Section 1443 when interpreting the

---

[3] Federal officer removal was brought into being in 1815 as a "congressional response to New England's opposition to the War of 1812, [and] its expansion in response to South Carolina's 1833 threats of nullification ... to enactment of the Judicial Code of 1948 when the removal statute took its present form encompassing all federal officers." *Mesa v. California*, 489 U.S. 121, 125-26 (1989). It seeks to avoid state-court hostility to federal authority. *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

civil rights removal exception and does not extend to other bases for remand order. *See Noel v. McCain*, 538 F.2d 633, 635 (4th Cir. 1976) (finding that jurisdiction to review remand of a non-excepted ground for removal "is not supplied by also seeking removal under § 1443(1)"); *City of Walker v. Louisiana*, 877 F.3d 563, 566 n.2 (5th Cir. 2017) (same); *Patel v. Del Taco Inc.*, 446 F.3d 996, 998 (9th Cir. 2006) (same). Section 1442 removal should receive the same treatment as these decisions on Section 1443 removal.

Federalism principles also require that "removal statutes are strictly construed." *Danca v. Private Health Care Sys., Inc*., 185 F.3d 1, 4 (1st Cir. 1999). Strict construction operates to preserve the "power reserved to the states under the Constitution to provide for the determination of controversies in their courts," which Congress may restrict only by the most explicit exercise of its authority over federal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). The required "'[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'" *Id*. at 109 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). *See also Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly."); *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29

F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction."); *City of Greenwood v. Peacock*, 384 U.S. 808, 831 (1966) ("[T]he provisions of § 1443(1) do not operate to work a wholesale dislocation of the historic relationship between the state and the federal courts in the administration of the . . . law.").

Indeed, federalism principles motivated the Removal Clarification Act of 2011, through which Congress specifically sought to protect federal officers from being brought into state courts under state pre-civil suit discovery statutes. H.R. REP. 112–17, at 3, 2011 U.S.C.C.A.N. at 422 ("The purpose of the law is to take from state courts the indefeasible power to hold a Federal officer or agent criminally or civilly liable for an act allegedly performed in the execution of their Federal duties."). Far from expanding the scope of appellate review to entire remand orders, an expansion that would tip the federalist scale in significant and unpredictable ways, Congress's amendment of the removal procedure statute was concerned with *preserving* the existing balance of power between state and federal courts in cases involving federal officers.

The Chamber of Commerce, as *amicus curiae*, offers an alternative interpretive approach to Section 1447(d), in support of a broader reading of its clear limitations that would have this Court review the entire remand order. *See* Br. of Amicus Curiae Chamber of Commerce ("Chamber Br.") 21-28. None of the

arguments the Chamber offers in support of its approach hold water. First, the Chamber relies on the Wright & Miller treatise and *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015), to argue that a broader review does not cause undue delay that would frustrate the purpose of the general ban on appeal of remand orders. Chamber Br. 22–23. Yet, there is no evidence to support this view, it runs against both Congressional intent and common sense, and most circuits have not adopted it. *See e.g.*, *Robertson v. Ball*, 534 F.2d 63, 66 n.5 (5th Cir. 1976) (warning against Section 1447(d) exceptions serving as a "dilatory tactic"); *Appalachian Volunteers, Inc. v. Clark*, 432 F.2d 530, 533 (6th Cir. 1970) (stating that "the review of issues other than those directly related to the propriety of the remand order itself would frustrate the clear Congressional policy of expedition"). Wright & Miller itself plainly acknowledges that "it has been held that review is limited to removability under § 1443." 15A Wright et al., Fed. Prac. & Proc. Juris. § 3914.11 (2d ed.). As the Eighth Circuit explained, "[t]he plain language of § 1447(d) governs this" result. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1229 (8th Cir. 2012).

Second, although the Chamber of Commerce posits that broader review is consistent with appellate procedure in other contexts such as 28 U.S.C. § 1292(b), 28 U.S.C. § 1453 (or the Class Action Fairness Act (CAFA)), appeals of orders granting or denying injunctions, and pendent-appellate-jurisdiction cases, all of which are distinguishable from Section 1447(d) or simply irrelevant. As Plaintiff

argues, Section 1292(b) does not establish a general rule for the scope of appellate appeal for statutes using the word "order." Pl. Br. 9-10. Furthermore, while some circuits have read CAFA to allow for broader review, other courts have correctly determined that "jurisdiction to review a CAFA remand order stops at the edge of the CAFA portion of the order." *City of Walker*, 877 F.3d at 567. *See also Jacks*, 701 F.3d at 1229.

The Chamber's argument based on analogies to the scope of appellate review of injunctions and the exercise of pendent-appellate-jurisdiction misapprehend the relevant precedents. The Chamber appears to argue that, in some contexts, courts of appeals may review matters that satisfy a well-articulated standard that tends to be the exception rather than the rule. Chamber Br. 26-27, *citing, e.g., Avery v. Sec'y of Health & Human Servs.*, 762 F.2d 158, 161 (1st Cir. 1985) (finding it "proper in the context of this litigation to treat the 'notice' and 'procedure' orders as injunctive relief that is appealable on an interlocutory basis" because they necessarily entailed the merits and relief for which a contempt order could be issued); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977) ("Appellate review, therefore, is properly limited in the ordinary case because it serves little purpose, other than delay, to engage in a de novo consideration of such an inherently indeterminate decision," but noting that the "case at bar presents special reasons [for plenary review] because of important considerations involved in patent litigation.").

As the language utilized by these decisions make plain, the cases do nothing to support a broad principle affording appellate courts the discretion to expand the scope of review whenever it might allow the court to address issues that may later come before them on appeal. Nor does it bear on the scope of appellate review of a district court remand order under Section 1447(d). The Chamber's proposed expansion of the scope of review would effectively undermine any and all limits imposed by Congress.

The language of the statute, congressional intent, and federalism principles all support limiting the scope of appellate review to Section 1447(d)'s stated exceptions. The vast majority of sister circuits agree with that conclusion, whether focused on federal-officer removal or its longstanding companion in Section 1447(d), the civil-rights exception. *See City of Walker*, 877 F.3d at 567 n.2 (citing Fifth Circuit precedents); *Jacks*, 701 F.3d at 1230 (8th Cir. 2012); *Patel*, 446 F.3d at 998 (9th Cir.) (examining civil-rights exception and finding review limited to that ground for remand) *Alabama v. Conley*, 245 F.3d 1292, 1293 n.1 (11th Cir. 2001) (same); *Davis v. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997) (same); *Noel v. McCain*, 538 F.2d 633, 635 (4th Cir. 1976) (same); *McQueary v. Jefferson Cty.*, 819 F.2d 1142, at *2 (6th Cir. 1987) (same).[4]

---

[4] Prudential reasons further support the rationale behind these decisions. If alleging federal-officer removal opens the door to appellate review of all other asserted bases for removal, no lawyer would neglect to find a defensible, if inadequate, way to

Although Defendants attempt to wedge the federal door open with federal-officer removal to allow for appeal of removal grounds that are not reviewable, this Court should consider only the meritless claim of federal-officer removal on appeal based on the widespread agreement as to the meaning of Section 1447(d). Congress plainly added federal-officer removal with knowledge of the section's preexisting interpretation. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). It expressed no intent nor added any language to indicate its disagreement with precedent that cabins review to the specified exceptions.

## II. THERE ARE NO "UNIQUELY FEDERAL INTERESTS" AT STAKE IN THIS CASE SUFFICIENT TO REQUIRE CONVERSION OF PLAINTIFF'S STATE LAW CLAIMS INTO FEDERAL LAW CLAIMS OR TO CONFER FEDERAL JURISDICTION.

The district court properly concluded that it lacked subject-matter jurisdiction because regardless of the transboundary nature of anthropogenic climate change there are no "uniquely federal interests" at issue in this case that require that the state law claims be transmuted into federal ones. The Supreme Court has described cases involving such "uniquely federal interests" as those "narrow areas [that are] . . . concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with

assert that peculiar form of removal to avoid the bar on interlocutory appeal for all other justifications for removal. As a result, the exception (federal-officer removal) would swallow the rule against interlocutory review of removal generally, highlighting the concerns articulated by these sister circuits about appellate delay.

foreign nations, and admiralty cases." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) (citation omitted). As the district court concluded and as State of Rhode Island persuasively argues in its brief, this case invokes none of those concerns.

This conclusion holds true whether Defendants reframe Plaintiff's claims as "arising under" federal common law, as raising disputed and substantial federal issues, or as being completely preempted. The first two arguments are masks for more straightforward preemption arguments properly addressed by state courts, *see Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Calif.*, 463 U.S. 1, 14 (1983) (ordinary preemption provides no basis for removal, even if it is the only issue); and the last argument is simply wrong.

The reasoning underlying Defendants' argument that there are "uniquely federal interests" at stake in this matter would, if adopted by this Court, pose a risk to cities and counties across the country. If endorsed, such reasoning could empower federal common law to hold domain over a broad swath of policy areas, and federal courts to claim jurisdiction over a wide array of state law claims, subverting cities' and other local governments' ability to rely on traditional legal tools in state courts to pursue remedies for environmental harms, among other things.

This potential outcome is especially worrisome in the context of climate change. Climate change directly impacts subnational governmental interests. *See*,

*e.g.*, *Am. Fuel & Petrochemical Manufacturers v. O'Keeffe*, 903 F.3d 903, 913 (9th Cir. 2018) ("[S]tates have a legitimate interest in combating the adverse effects of climate change on their residents."). *See also*, *e.g.*, Climate Protection and Green Economy Act, Mass. Gen. Laws Ann. ch. 21N (requiring regulatory limits set for sources or categories of sources that emit greenhouse gases); Climate Change Planning and Resiliency Act, Conn. Pub. Act 18-82 (requiring state to achieve greenhouse gas reduction of at least 45% below 2001's levels by January 1, 2030; integrates new sea level change projections into various municipal and state planning documents; and, applies the new sea level change projections to the state's coastal management and flood management laws). Moreover, federal emissions programs have assigned emissions limits to states, making states responsible for determining how to reach them. *See*, *e.g.*, Clean Power Plan, 80 Fed. Reg. 64,662 (Oct. 23, 2015).

As a result, states have taken a wide array of actions to combat climate change, including adopting adaptation or resilience plans. These efforts require the expenditure of significant funds and use of public resources. *See* Center for Climate and Energy Solutions, State Climate Policy Maps, https://www.c2es.org/content/state-climate-policy/ (last visited Dec. 23, 2019) (showing that all states within the First Circuit have adopted greenhouse gas emissions targets).

Cities have also been at the forefront of climate action. At last count, 1,060 mayors have joined the U.S. Conference of Mayors' Climate Protection Agreement. Some 280 cities and counties have joined the "We Are Still In" coalition, a group of more than 3,600 mayors, county executives, governors, tribal leaders, college and university leaders, businesses, faith groups, and investors who have committed to take action consistent with the United States' Paris Agreement commitments. In addition to the resources provided by Local Government *Amici* to their members, national and transnational peer networks such as Climate Mayors, Carbon Neutral Cities Alliance, C40, and ICLEI – Local Governments for Sustainability have been formed to provide cities, city political leaders, and city agency staff with support and capacity to take on climate change challenges.

Importantly, courts have routinely upheld subnational climate actions in the face of challenges that they interfere with national interests or priorities and affirmed the legitimacy of state interests in climate action. *See, e.g.*, *Rocky Mtn. Farmers v. Corey*, 913 F.3d 940 (9th Cir. 2019) (upholding California's low carbon fuel standard against preemption and dormant commerce clause challenge and noting it reflects "legitimate state interest"); *Am. Fuel & Petrochemical Manufacturers*, 903 F.3d 903 (upholding Oregon's low carbon fuel standard against dormant commerce clause challenge); *Electric Power Supply Ass'n v. Star*, 904 F.3d 518 (7th Cir. 2018) (upholding Illinois promoting zero-carbon energy sources against dormant

commerce cause and preemption by the Federal Power Act); *Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554, 559 (S.D.N.Y. 2017) (holding New York State program promoting zero-carbon energy sources did not violate dormant commerce cause), *aff'd* 906 F.3d 41 (2d Cir. 2018); *Energy and Env't Legal Inst. v. Epel*, 43 F. Supp. 3d 1171 (D. Colo. 2014) (finding Colorado renewable energy mandate did not violate dormant commerce clause). *Cf. Columbia Pac. Bldg. Trades Council v. City of Portland*, 412 P.3d 258 (Or. Ct. App. 2018) (holding zoning ordinance banning new and expanded fossil fuel export terminals did not violate dormant commerce clause but not reaching whether reducing greenhouse gasses is a legitimate local interest due to other interests supporting city's decision).

This consistent treatment by the courts of state and local efforts affirms that global climate change is also a local problem, requiring local solutions. As discussed in Part III below, courts have also, until recently, upheld the availability of state law claims for climate harms. This Court should keep this case in line with precedent.

## III. THE DISPLACEMENT OF A FEDERAL COMMON LAW CAUSE OF ACTION FOR NUISANCE BY STATUTE REQUIRES THE STATE LAW CAUSE OF ACTION BE TREATED ON ITS OWN TERMS.

As the State of Rhode Island argues in its brief, the displacement of any federal common law claims by the Clean Air Act only confirms the viability of Plaintiff's state law claims.

The Supreme Court, as all parties to the present litigation acknowledge, directly addressed the displacement of federal public nuisance in *Am. Elec. Power, Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (*AEP*), explaining that "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement" of GHG emissions. The Ninth Circuit, following the Supreme Court's precedent, held "if a cause of action is displaced, displacement is extended to all remedies," including damages. *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 857 (9th Cir. 2012). Neither *AEP* nor *Kivalina* foreclosed a public nuisance claim based on state law, nor the availability of state courts to adjudicate such a claim.

Indeed, they did just the opposite. The Supreme Court's express view is that the existence of a federal common law claim that has been displaced by federal legislation does *not* erase the possibility of state law claims; rather, it converts the availability of state claims into an ordinary question of statutory preemption. *See City of Milwaukee v. Illinois*, 451 U.S. 304, 327-29 (1981); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 487 (1987). Accordingly, in her opinion for a unanimous court in *AEP*, Justice Ginsburg wrote, "[i]n light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act." *AEP*, 564 U.S. at 429. *See also Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690 (6th Cir. 2015) and

*Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 698 (6th Cir. 2015) (state common law nuisance for interstate pollution not preempted by Clean Air Act).

The Ninth Circuit's decision in *Kivalina* further supports proceeding with the state law claims in this case. Discussing the supplemental state law claims filed there, the Ninth Circuit panel noted that the district court had declined to exercise supplemental jurisdiction and dismissed the claim without prejudice to re-file in state court. 696 F.3d at 854-55. *See also Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 882 (N.D. Cal. 2009) (stating that a federal court "may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction"), *aff'd* 696 F.3d 849, 857 (9th Cir. 2012); *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) ("Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain, . . . certainly if the federal claims are dismissed before trial ... the state claims should be dismissed without prejudice. . . . For, when all federal claims are dismissed early in the litigation, the justifications behind pendent jurisdiction—considerations of judicial economy, convenience and fairness to litigants—are typically absent." (citations omitted)).

The concurrence in *Kivalina* stated unequivocally that "[d]isplacement of the federal common law does not leave those injured by air pollution without a remedy,"

and suggested state nuisance law as "an available option to the extent it is not preempted by federal law." 696 F.3d at 866 (Pro, J., concurring). Here, there can be no such preemption because federal law does not address either climate change adaptation damages or Defendants' product design and marketing activities, and therefore cannot preempt Plaintiff's claims. In any event, as the district court in *County of San Mateo v. Chevron* noted, state courts are "entirely capable of adjudicating" whether state laws claims are preempted by federal law. 294 F. Supp. 3d at 938. The possibility of preemption does not result in the erasure of the cause of the action. Moreover, preemption is a defense to state law claims and cannot provide the basis for federal court jurisdiction. *Franchise Tax Bd*, 463 U.S. at 14.

The Supreme Court and Ninth Circuit's jurisprudence is also consistent with the original Fifth Circuit panel's 2009 opinion in *Comer v. Murphy Oil USA*, 585 F.3d 855, 860 (5th Cir. 2009) (*Comer I*), *petition for writ of mandamus denied sub nom. In re Comer*, 562 U.S. 1133 (2011). In *Comer I*, plaintiffs seeking damages for injuries suffered as a result of Hurricane Katrina had invoked federal jurisdiction based on diversity. The Fifth Circuit panel found that a diversity suit brought under state law for damages was materially distinguishable from public nuisance claims brought under federal law and sustained the claims. 585 F.3d at 878-79. (The decision was subsequently vacated when the Fifth Circuit granted rehearing *en banc*; the Fifth Circuit then failed to muster a quorum for the rehearing, thereby effectively

reinstating the district court's decision as a matter of law. *Comer v. Murphy Oil USA*, 607 F.3d 1049 (5th Cir. 2010)).

The weight of precedent is overwhelming, and the district court's remand order is consistent with it. Defendants' argument that Plaintiff's state law claims challenging one set of behaviors (production, marketing, and sale of a product) should be converted into a federal law claim challenging another set of behaviors (combustion of the product and emission of greenhouse gases) should be rejected. Even if this Court were to accept that there is a federal common law claim that could apply in this context, its displacement by statute would demand the state law claims be heard on their own terms, and that *all* arguments about preemption, other than the inapt assertion of complete preemption, be heard in state court.

## CONCLUSION

For the foregoing reasons, Local Government *Amici* urge this Court to affirm the district court's Order Granting Motions to Remand.

Dated: January 2, 2019

Respectfully submitted,

s/ Robert S. Peck
Robert S. Peck
CENTER FOR CONSTITUTIONAL LITIGATION, P.C.
455 Massachusetts Avenue, N.W.
Suite 152
Washington, DC 20001
(202) 944-2874
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: January 2, 2020

s/ Robert S. Peck
Robert S. Peck
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,940 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: January 2, 2020

s/ Robert S. Peck
Robert S. Peck
*Counsel for Amici Curiae*