No. 19-1818

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

STATE OF RHODE ISLAND,
Plaintiff-Appellee,

v.

SHELL OIL PRODUCTS CO., LLC; CHEVRON CORP.; CHEVRON USA, INC.; EXXONMOBILE CORP.; BP, PLC; BP AMERICA, INC; BP PRODUCTS NORTH AMERICA, INC.; ROYAL DUTCH SHELL P.L.C.; MOTIVA ENTERPRISES, L.L.C.; CITGO PETROLEUM CORP.; CONOCOPHILLIPS; CONOCOPHILLIPS CO.; PHILLIPS 66; MARATHON OIL CO.; MPARATHON PETOREUM CORP.; MARATHON PEROLEUM CO., L.P.; SPEEDWAY, L.L.C.; HESS CORP.; LUKOIL PAN AMERICA L.L.C.; AND DOES 1–100,

Defendants-Appellants.

On Appeal from the United States District Court for the
District of Rhode Island, No. 1:18-cv-000395-WES,
The Honorable William E. Smith

## *AMICUS* BRIEF OF INDIANA AND 15 OTHER STATES IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING AND REHEARING EN BANC

| | |
|---|---|
| Office of the Attorney General<br>IGC South, Fifth Floor<br>302 W. Washington Street<br>Indianapolis, IN 46204<br>(317) 232-6255<br>Tom.Fisher@atg.in.gov<br><br>*Counsel for Amici Curiae* | THEODORE E. ROKITA<br>Attorney General of Indiana<br><br>THOMAS M. FISHER<br>Solicitor General<br><br>JAMES A. BARTA<br>Deputy Solicitor General<br><br>JULIA C. PAYNE<br>MELINDA R. HOLMES<br>Deputy Attorneys General |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICI* STATES ........................................................................ 1

ARGUMENT ........................................................................................................ 1

I.    Rhode Island's Nuisance Claims To Abate Global Climate Change Are Removable to Federal Court ......................................... 3

    A.    Federal law necessarily governs any common-law claims to abate global climate change ...................................... 3

    B.    Removal of common-law claims to abate global climate change is proper ........................................................ 8

II.   The Panel Erred in Rejecting Federal Common Law ...................... 9

III.  The Issue Is of Nationwide Importance .......................................... 12

CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Am. Elec. Power Co. v. Connecticut,*
564 U.S. 410 (2011) ............................................................................... *passim*

*Avco Corp. v. Aero Lodge No. 735,*
390 U.S. 557 (1968) ........................................................................................ 9

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) ........................................................................................ 3

*City of Milwaukee v. Illinois,*
451 U.S. 304 (1981) .................................................................................. 5, 10

*City of New York v. Chevron Corp.,*
993 F.3d 81 (2d Cir. 2021) ................................................................ 6, 7, 10, 11

*Clearfield Tr. Co. v. United States,*
318 U.S. 363 (1943) ........................................................................................ 3

*Erie Railroad Co. v. Tompkins,*
304 U.S. 64 (1938) .......................................................................................... 3

*Home Depot U.S.A., Inc. v. Jackson,*
139 S. Ct. 1743 (2019) .................................................................................... 8

*Illinois v. City of Milwaukee,*
406 U.S. 91 (1972) ................................................................................. *passim*

*Int'l Paper Co. v. Ouellette,*
479 U.S. 481 (1987) .............................................................................. 7, 11, 13

*Kurns v. R.R. Friction Prods. Corp.,*
565 U.S. 625 (2012) ...................................................................................... 11

*Rivet v. Regions Bank of La.,*
522 U.S. 470 (1998) ........................................................................................ 9

*United States v. Kimbell Foods, Inc.,*
440 U.S. 715 (1979) ...................................................................................... 10

## CASES [CONT'D]

*United States v. Standard Oil Co.*,
    332 U.S. 301 (1947) .................................................................................. 3

## STATUTES

28 U.S.C. § 1331 ............................................................................................. 8

28 U.S.C. § 1331(a) ..................................................................................... 4, 8

28 U.S.C. § 1441(a) ......................................................................................... 8

42 U.S.C. § 7401(a)(3) .................................................................................. 12

42 U.S.C. § 7410(a) ...................................................................................... 13

42 U.S.C. § 7410(a)(1) .................................................................................. 11

42 U.S.C. § 7412(*l*) ...................................................................................... 13

42 U.S.C. § 7416 ........................................................................................... 13

42 U.S.C. § 7661a ......................................................................................... 13

Ind. Code § 13-17-1-1 *et seq* ........................................................................... 6

Ind. Code § 13-17-1-1 ..................................................................................... 6

## OTHER AUTHORITIES

Charles Alan Wright & Arthur R. Miller, 19 *Fed. Prac. &
    Proc. Juris.* § 4514 (3d ed. 2021) .............................................................. 8

## INTEREST OF *AMICI* STATES

The States of Indiana, Alabama, Alaska, Arkansas, Georgia, Kansas, Kentucky, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, Utah, and Wyoming respectfully submit this brief as *amici curiae* in support of the petition for rehearing and rehearing en banc. The panel's ruling that nuisance claims to abate global climate change must proceed in state court, under state law, is of significant interest to *amici*. That ruling threatens to let a single State's judiciary set climate-change policy for other States. As co-equal sovereigns, *amici* States have a profound interest in, and unique perspective on, the proper role of state law and state courts in addressing climate change.

## ARGUMENT

This case involves common-law nuisance claims by Rhode Island against energy companies for contributing to "*global* greenhouse gas pollution" and climate change by extracting, producing, and promoting fossil-fuel products. JA 23 (emphasis added). Under Rhode Island's theory, mitigating liability would require the companies to act differently not just in Rhode Island but everywhere in the world they do business.

1

As the Supreme Court has recognized, such claims for interstate emissions implicate federalism and other unique national interests. Courts thus are "require[d]" to "apply federal"—not state—nuisance law to interstate-pollution claims, giving federal courts jurisdiction over them. *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 & n.6 (1972) (*Milwaukee I*). That outcome makes sense. Permitting 50 different state judiciaries to set *global emissions standards* would lead to utter chaos.

The panel nonetheless ruled that Rhode Island courts applying Rhode Island law must decide Rhode Island's claims. It held that federal common law is inapplicable regardless because the Clean Air Act (CAA) "'displace[s]'" any common-law claim that previously governed claims for transboundary pollution, such as the ones here. Op. 19. But that misapprehends the CAA's effect. The CAA does not authorize a single State's courts to set national emissions standards. It merely transfers responsibility for setting those standards from *federal* courts to other *federal* officials. The panel's contrary ruling threatens to give Rhode Island courts the power to set climate-change policy for the entire country.

## I. Rhode Island's Nuisance Claims To Abate Global Climate Change Are Removable to Federal Court

### A. Federal law necessarily governs any common-law claims to abate global climate change

Rhode Island's common-law nuisance claims necessarily arise under federal law. Notwithstanding *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court has repeatedly recognized that "'specialized federal common law'" governs "'subjects within national legislative power where Congress has so directed' or where the basic scheme of the Constitution so demands." *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421 (2011) (*AEP*). Some areas involving "'uniquely federal interests'" are so committed to federal control that any claims "are governed *exclusively* by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (emphasis added); *see, e.g.*, *United States v. Standard Oil Co.*, 332 U.S. 301, 305 (1947) ("liability [for interference in the government-soldier relationship] is not a matter to be determined by state law"); *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 366 (1943) ("rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law").

1. One area of "uniquely federal interest" subject to federal law is interstate emissions: "When we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Milwaukee I*, 406 U.S. at 103. In *Milwaukee I*, the Supreme Court considered whether a nuisance claim for "pollution of interstate or navigable waters" was governed by federal law and "ar[ose] under the 'laws' of the United States" within the meaning of 28 U.S.C. § 1331(a)—and held "that it d[id]." *Id.* at 99. "'[T]he ecological rights of a State in the improper impairment of them from sources outside the State's own territory,'" the Court ruled, has its "'basis and standard in federal common law.'" *Id.* at 99–100.

In so holding, the Court acknowledged that the claim fell outside of any federal statute addressing interstate pollution. *See* 406 U.S. at 103. But that did not mean state law governed. To the contrary, the Court observed that the very nature of a claim for "pollution of a body of water . . . bounded" by multiple States "require[d]" it "to apply federal law." *Id.* at 105 n.6. The claim implicated "an overriding federal interest in the need for a uniform rule of decision" and "basic interests of federalism." *Id.* Thus, the Court declared, "federal law governs." *Id.* at 107; *see id.* at 102 ("federal, not state, law . . . controls"); *id.* at 107 n.9 (similar).

4

Not long ago in *AEP*, the Supreme Court reiterated those principles: "Environmental protection," it explained, is "undoubtedly" an area "meet for federal law governance" in which federal courts "may fill in 'statutory interstices,' and, if necessary, even 'fashion federal law.'" 564 U.S. at 421–22. That is why the Supreme Court has for 120 years "approved federal common-law suits brought by one State to abate pollution emanating from another State." *Id.* (collecting examples, including *Milwaukee I*). The Court has applied "federal common law" precisely "because state law cannot be used." *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 n.7 (1981) (*Milwaukee II*).

2. As those decisions establish, nuisance claims to abate *interstate* pollution are governed exclusively by federal common law. *A fortiori* nuisance claims to abate *global* emissions are governed exclusively by it as well. As this case illustrates, nuisance claims to abate global greenhouse-gas emissions raise the same unique federal interests that require courts to apply federal common law to interstate-pollution claims.

This case involves nuisance claims for injuries allegedly caused by "global greenhouse gas pollution." JA 23. On Rhode Island's own account, however, global warming is a global problem. Rhode Island concedes that

a wide variety of human actions—including actions by innumerable third parties—have contributed to global climate change over many decades. *See* JA 30–55. And it concedes that the defendant energy companies—which represent only a small number of the world's companies that extract, produce, and market fossil fuels—have extracted, produced, and marketed fossil fuels all over the globe, not merely in Rhode Island. *See* JA 29–46, 69–119. For those companies to avoid liability under Rhode Island's theory, they would have to take actions in "every state (and country)." *City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021). Yet Rhode Island seeks to have its own courts applying its own law determine those actions. It effectively seeks to set global policy.

As the Second Circuit has recognized, that approach to global climate change raises obvious "foreign policy" and "federalism" concerns. *City of New York*, 993 F.3d at 92–93. States (and other countries) have a variety of carefully calibrated regulatory programs to address emissions *within* their respective borders. *See, e.g.*, Ind. Code § 13-17-1-1 *et seq*. And those programs consider a variety of environmental, economic, and other local interests, striking different balances. *See, e.g., id.* § 13-17-1-1 (listing considerations). To let Rhode Island's judiciary override the policy

6

choices of co-equal sovereigns by imposing liability for out-of-state emissions under Rhode Island nuisance law would undermine "basic interests of federalism." *Milwaukee I*, 406 U.S. at 105 n.6.

Worse, Rhode Island is not alone in urging state courts to craft judicial solutions to the complex issue of global climate change. *See, e.g.*, *City of New York*, 993 F.3d at 85–86. Many other governments have brought similar nuisance claims, and if such claims are left in state court, chances are that at least some state courts will be receptive. The inevitable result will be a "chaotic" patchwork of conflicting standards for the same conduct. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496–97 (1987).

Any worldwide allocation of responsibility for remediation of climate change requires national or international action, not ad hoc intervention by individual state courts under state nuisance law acting at the behest of a handful of state and local governments. It is precisely for this reason that the Supreme Court long ago recognized that any common-law answers to interstate-pollution problems should be given by federal courts applying federal law. *See Milwaukee I*, 406 U.S. at 103.

## B. Removal of common-law claims to abate global climate change is proper

Because federal law necessarily governs Rhode Island's nuisance claims to abate global climate change, this case is removable to federal court. Defendants may remove any state-court case over which federal district courts would have had "original jurisdiction," 28 U.S.C. § 1441(a), including cases presenting claims "arising under the Constitution, laws, or treaties of the United States," *id.* § 1331; *see Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019). And it is well-established that a "case 'arising under' federal common law presents a federal question . . . within the original subject matter jurisdiction of the federal courts." Charles Alan Wright & Arthur R. Miller, 19 *Fed. Prac. & Proc. Juris.* § 4514 (3d ed. 2021).

*Milwaukee I* makes particularly clear that federal courts have jurisdiction here. There, the Supreme Court held that "nuisance" claims for "pollution of interstate or navigable waters creates actions arising under the 'laws' of the United States within the meaning of § 1331(a)," the statute providing for federal-question jurisdiction. 406 U.S. at 99. As the Court explained, such claims "require[]" application of federal law—just like state disputes over "boundaries" and "interstate streams," which

8

have long "'been recognized as presenting federal questions.'" *Id.* at 105 & n.6. That means the claims have their "'basis and standard in federal common law and so directly constitut[e] a question arising under the laws of the United States.'" *Id.* at 99–100. The same is true here.

The mere fact that Rhode Island's complaint does not expressly assert claims under federal common law is immaterial. Under the artful-pleading doctrine, a "'plaintiff may not defeat removal by omitting to plead necessary federal questions.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). Thus, where—as here—a claim is "controlled by federal substantive law," it may be removed to federal court, *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968), "even though no federal question appears on the face of the plaintiff's complaint," *Rivet*, 552 U.S. at 475. Rhode Island cannot evade federal law or federal jurisdiction by unilaterally declaring that its nuisance claims arise under state law.

## II. The Panel Erred in Rejecting Federal Common Law

In refusing to permit removal, the panel misapprehended the source of law governing common-law claims to abate global emissions. The panel "'assum[ed]'" that Rhode Island's claims implicated the same unique federal interests that require applying federal common law to

9

other sorts of "'transboundary pollution' claims." Op. 15–16, 18. In the panel's view, however, Rhode Island's claims did not arise under federal common law because the CAA has "'statutorily displaced any federal common law that previously existed.'" *Id.* at 18–19.

That misapprehends the CAA. Through the CAA, Congress transferred responsibility for setting interstate standards from the *federal* judiciary to politically accountable branches of the *federal* government. *See AEP*, 564 U.S. at 423–25. It forbade federal courts from supplementing the CAA. *See id.* But that does not imply state courts may craft the very interstate-emissions standards that federal courts are prohibited from creating. *See City of New York*, 993 F.3d at 98. State courts did not possess that authority "in the first place," *id.*: Pre-CAA precedent applied "federal common law" to interstate-pollution nuisance claims precisely because "state law cannot be used," *Milwaukee II*, 451 U.S. at 313 n.7.

That States retain authority under the CAA "to adopt or enforce" local emissions standards, including by "common law," Op. 23–24, does not imply state law may govern transboundary-pollution issues. A claim may arise exclusively under federal law even where it incorporates or leaves space for state standards. *See Milwaukee I*, 406 U.S. at 107; *United*

10

*States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726–27, 739–40 (1979). That is the case here. State authority is confined to *in-state* sources; it does not extend to *out-of-state* sources. *See, e.g.*, 42 U.S.C. § 7410(a)(1) (permitting State to adopt plan for region "within such State"); *AEP*, 564 U.S. at 427–28; *Int'l Paper*, 479 U.S. at 490–500. And that authority is exercised under a *federal* framework that gives "primary" responsibility for "greenhouse gas emissions" to a *federal* agency. *AEP*, 564 U.S. at 428.

The panel also suggested that, even absent the CAA, federal common law governing claims to abate transboundary pollution might not control here. But the mere fact that Rhode Island refrains from expressly asking for abatement of "greenhouse-gas emissions," Op. 18 n.8, does not mean that its claims arise under state law. As the Supreme Court has recognized, "'regulation can be effectively exerted through an award of damages.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012). Damages awards for contributing to greenhouse gases can just as "effectively regulate" energy companies' behavior as injunctions against drilling for oil or selling gasoline. *City of New York*, 993 F.3d at 92.

Nor does it matter that the panel harbored doubts about whether the criteria for "'recogni[zing]'" a new "'federal rule of decision,'" Op. 15–

11

16, were met. The Supreme Court has *already* recognized that, "'[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law.'" *AEP*, 564 U.S. at 421 (quoting *Milwaukee I*, 406 U.S. at 103). Applying the "law of a particular State" to Rhode Island's nuisance claims thus "would be inappropriate." *Id.* at 422.

### III. The Issue Is of Nationwide Importance

This case warrants review by the full Court. The central issue here—whether federal or state law necessarily governs nuisance claims for global climate change—is of nationwide importance. If (as the panel ruled) state law governs, a handful of state-court judges will have the power to dictate emissions policy for the Nation. That outcome is particularly troubling given that the claims here call for judges to balance "social benefit[s]" and "costs," JA 141—a quintessentially legislative function. National policy on an issue as sensitive and complex as global climate change should be made by nationally elected officials.

Congress has recognized as much. In the CAA, it assigned States a significant role under the statute, permitting state officials to craft state-specific solutions, subject to review by federal officials, to the difficult questions surrounding air-pollution regulation. *See, e.g.*, 42 U.S.C.

§§ 7401(a)(3), 7410(a), 7412(*l*), 7416, 7661a. Crucially, however, Congress also made clear that state regulatory prerogatives stop at the state line. *See AEP*, 564 U.S. at 427–28; *Int'l Paper*, 479 U.S. at 490–500. It recognized that limit was necessary if all States were to have autonomy to balance health, economic, and environmental conditions in response to local conditions. The panel's decision, in stark contrast, allows a few States to impose a single, one-size-fits-all policy on the entire country.

## CONCLUSION

This Court should grant rehearing and rehearing en banc.

Respectfully submitted,

| | |
|---|---|
| Office of the Attorney General<br>IGC South, Fifth Floor<br>302 W. Washington Street<br>Indianapolis, IN 46204<br>(317) 232-6255<br>Tom.Fisher@atg.in.gov | THEODORE E. ROKITA<br>Attorney General of Indiana<br><br>/s/ Thomas M. Fisher<br>THOMAS M. FISHER<br>Solicitor General<br><br>JAMES A. BARTA<br>Deputy Solicitor General<br><br>JULIA C. PAYNE<br>MELINDA R. HOLMES<br>Deputy Attorneys General |

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

LESLIE RUTLEDGE
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

DEREK SCHMIDT
Attorney General
State of Kansas

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

LYNN FITCH
Attorney General
State of Mississippi

ERIC SCHMITT
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

DOUG PETERSON
Attorney General
State of Nebraska

JOHN M. O'CONNOR
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

KEN PAXTON
Attorney General
State of Texas

SEAN REYES
Attorney General
State of Utah

BRIDGET HILL
Attorney General
State of Wyoming

14

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 2,509 words. This certificate was prepared according to the word-count function of Microsoft Word, the word-processing program used to prepare this brief.

                                                    By: <u>/s/ Thomas M. Fisher</u>
                                                        Thomas M. Fisher
                                                        Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Thomas M. Fisher
Thomas M. Fisher
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov